BABCOCK, Respondent, v. McKee, Appellant.

(18 N. W.2d 750.)

(File No. 8720. Opinion filed May 15, 1945.)

**Ernest A. Crockett, H. A. Doyle,** and **Frank Biegelmeier,** all of Yankton, for Appellant.

**R. K. Janda,** of Wagner, and **Wicks & Quinn,** of Scotland, for Respondent.

RUDOLPH, J. In this action the plaintiff seeks to recover possession of a certain elevator building located upon the premises of the Milwaukee Railway Company in Wag-

ner, South Dakota. In 1907 the Railway Company entered into a lease with the Wagner Grain Company which leased the premises upon which the elevator was to be built by the lessee "for the term of One year from the first day of Aug— 1907, and thereafter until sixty days after either party shall have given to the other written notice of its desire to terminate this Indenture". The lease provided for an annual rental, restricted the use of the property to elevator purposes and in paragraph 6 provided that any violation of the lease or failure to comply with its conditions "shall terminate this lease without any notice or act upon the part of the Railway Company, and thereupon it may re-enter and take possession of said premises with or without process of law". The lease further provided: "The Lessee hereby accepts the foregoing lease, and covenants and agrees faithfully to observe and perform all the terms, conditions and requirements therein contained, and it further agrees that it will surrender said demised premises at any termination of this Lease, and will, before such termination, completely remove from said premises all property owned or placed thereon by it which it may elect to remove; that failure so to remove any such property shall be conclusively deemed an election to abandon the same and an abandonment thereof to said Railway Company as a landlord, as in case of ordinary tenants' fixtures not removed by a tenant within his term; and that in such case the Railway Company shall from and after any such termination be at full liberty to re-enter and take possession of all the demised premises and to remove therefrom at the expense of the Lessee, all such property there remaining, or, at its own sole option, to appropriate and dispose thereof, as it may deem best, without any liability or accountability whatever therefor; but nothing herein contained shall preclude the Railway Company from any other legal remedy."

This lease was assigned to the plaintiff by the Wagner Grain Company with the consent of the Railway Company in 1929. The plaintiff, who owned a large amount of land in the vicinity of Wagner, operated the elevator in connection with his farming operations and continued paying the rent to the Railway Company as provided in the lease until the year 1936. The rent due August 1936 was not paid nor,

except as hereinafter stated, has any rent been paid by the plaintiff to the Railway Company since that date. On December 1, 1938 the Railway Company served upon the plaintiff a notice of the termination of the lease which notice, after describing the lease and the property covered thereby, stated: "Now, therefore, as Lessee of the herein above described premises by virtue of the assignment of the said lease to yourself on April 15, 1929, you are hereby notified that the said Milwaukee Trustees hereby cancel and terminate said lease, said termination to take effect Sixty (60) days from receipt of this notice."

Following the receipt of this notice the plaintiff did nothing. The elevator which was in a bad state of repair and not being used remained upon the premises without attention until March 1939 when the section foreman of the Railway Company at Wagner, acting under instructions from the local agent, placed locks upon the doors and boarded up the windows and doors to prevent trespassers entering the building. In November, 1939, the Railway Company notified the plaintiff that it considered the elevator a fire hazard and that unless the same was removed within thirty days the Company would cause its removal. Thereafter, the officers of the Company and the plaintiff had some discussion concerning this elevator, the back rent owing by the plaintiff, and a new lease of the premises. On February 5, 1940, the Company wrote to the plaintiff as follows:

"Referring to your recent discussion with Messrs. Taylor and Cooley concerning the cancellation of leases for elevator and warehouse at Wagner, South Dakota:

"You tendered check in amount $22.50 as one year's rental in advance under proposed new lease effective February 1, 1940. You also offered to sign a promissory note bearing 6% interest to pay the accrued rental in the amount of $112.08 for the period prior to February 1, 1940. The acceptance of a note has not been approved. If you convey the elevator and warehouse to the Milwaukee Road with the understanding that the structures will be reconveyed to you upon the payment in full of the delinquent account amount $112.08, I will ask aproval to enter into a new lease combining the two areas to hold for a term of one year from

February 1, 1940 and thereafter until terminated on sixty days' notice. The rental under this lease would be $29.20 per annum of 'which $22.50 would be land rent and $6.70 would be interest at 6% on the indebtedness of $112.08.

"Subject to the approval of the management, I submit herewith new lease No. 50510 also bill of sale. If this proposal mets with your approval, please sign both copies of each instrument and return to me together with check in amount of $6.70. Promptly thereafter I will submit the matter to the management for approval and advise you of their decision.

"The bill of sale should be executed before a notary public."

The plaintiff replied to this letter as follows:

"Your letter of Feb. 4th together with lease and bill of sale of my Wagner property was received. I did not sign the lease as it was not according to our agreement. I did agree to pay you $22.50 in advance for lease of elevator & warehouse sites not $29.20 as provided in lease.

"Where do you get the $6.70. I did not agree to give you a bill of sale for property that cost over $12,000.00 to secure $112.08.

"Send me a lease according to our agreement and I will sign & return at once."

The company replied to the plaintiff's letter on March 11, 1940 as follows:

"Referring to your recent letter advising that you are not willing to give the Milwaukee Road a bill of sale to the elevator and warehouse at Wagner to secure an indebtedness of $112.08, also that you are not willing to enter into a lease and pay a rental of $22.50 for the land plus $6.70 per year as interest at 6% on the indebtedness of $112.08.

"Under this proposal the interest of $6.70 would not be payable after the payment of the indebtedness of $112.08.

"When you discussed the rental account with Messrs. Taylor and Cooley, you offered to give the Milwaukee Road a note for $112.08 bearing interest at 6%. As explained to you in my letter of February 5, your offer was not acceptable to the management.

"You were given notice of the cancellation of the twc leases, one on the levator site, and the other on the warehouse site. You were further notified on November 27, 1939 that unless the structures were removed by you within thirty days, that the Milwaukee Trustees would take posses- ·sion and cause the removal of the structures in the manner as provided for in the respective leases. The point I am making is that the structures are now the property of the Milwaukee Railroad.

"I hereby withdraw my offer to lease the land to you at a rental of $22.50 per annum. If you want to regain possession of the elevator and warehouse, you can do so by . the immediate settlement of the past due account amount $112.08. Send me your check in amount of $112.08 on or before March 18 and it will be accepted as full setlement of the account for the period prior to February 1, 1940. If the account is settled by March 18, I will give you our standard lease on the two sites at a rental of $22.50 per annum effective February 1, 1940.

"If your check is not received on or before March 18, the Railroad Company will make such arrangements as deemed necessary for the razing of the structures and the clearing of the premises.

"As your offer to give a note to secure the indebtedness of $112.08 and enter into new land lease effective February 1, 1940 at a rental of $22.50 was not acceptable to the management, I am returning herewith your check in amount of $22.50 dated January 12, 1940 which you tendered as rent on the warehouse and elevator site for the annual period ending February 1, 1941. Please acknowledge receipt." ·

This exchange of correspondence apparently concluded negotiations between the parties until some time in the year 1941. In July of 1941 the plaintiff wrote the Railway Company that he was settling with his creditors on the basis of 50% of the amount he owed and asked to hear from the ·Company "as to settlement I can make." From August 1, 1935 when the last rent payment under the lease was made until the time the lease was canceled by the service of the notice, rent in the amount of $97.50 had

accumulated which sum included rent for a warehouse site in addition to the rent for the elevator site. In March 1942 plaintiff sent the Company a check in the sum of $48.75 which had written on the face thereof "settlement in full on Wagner elevator." With reference to this check and its acceptance the Company wrote to the plaintiff as follows:

"I wish to thank you for your letter of March 5th, enclosing your check for $48.75 in full payment of the rent due under the leases at Wagner, up to the date they were cancelled.

"Of course, this payment of the past-due rent will not in any way affect the cancellation of the leases or any rights, if any, which we may have acquired by that action."

With reference to this payment the plaintiff was asked the following question at the trial: "The fact of it is, you made a settlement with the Milwaukee Railroad Company on the basis of 50% on the back rent you owed them, and that was the rent due prior to the time that this original lease Exhibit 1, was cancelled?" Plaintiff's answer to this question was "Yes, sir."

In July 1941 the Railway Company leased the premises upon which the elevator was located to the defendant. The defendant went into possession thereof and made improvements upon the elevator which the trial court found amounted in value to $1,000. Prior to leasing the premises from the Railway Company the defendant wrote the plaintiff with the purpose of purchasing the elevator from the plaintiff.

Based upon the above-stated facts the trial court determined that the Railway Company waived any right, title or claim which it may have had to said elevator, that the plaintiff is the owner thereof and entered judgment against the defendant for the recovery of the immediate possession of the elevator by plaintiff "and if a recovery cannot be had for the sum of $1600.00 the value of said elevator and the additional sum of $750.00 value of the use of said elevator while it was detained by the defendant less the sum of $1000.00 the value of the repairs and im-

provements made on said elevator by the defendant." The defendant has appealed.

■■ The law is established in this state that a plaintiff in replevin must recover on the strength of his own title and the defendant, though not the owner, if in possession of the property is entitled to judgment where plaintiff has no title and no right to possession. Dixson v. Ladd, 32 S. D. 163, 142 N. W. 259, 46 L.R.A.,N.S., 206, Ann.Cas1916A, 253. Plaintiff in this action claims to be the owner of the elevator building, and bases his right to possession upon ownership. The question presented is whether plaintiff is the owner of the building, or whether ownership was lost by the cancellation of the lease by the Railroad Company. Under the provisions of the lease, and by virtue of the service of the sixty-day notice, the lease terminated not later than February 1, 1939. The lease provides that before its termination the lessee will remove from the premises all property placed thereon and that "failure so to remove any such property shall be conclusively deemed an election to abandon the same and an abandonment thereof to said Railway Company as a landlord, as in case of ordinary tenants' fixtures not removed by a tenant within his term;". We believe the effect of these provisions of the lease is apparent. Under the terms of the lease if plaintiff failed to remove the elevator building before the termination of the lease it would constitute an abandonment of the building to the Railway Company, and the Company under these provisions would become the owner thereof "as in case of ordinary tenants' fixtures not removed by a tenant within his term." SDC 51.1103.

■ Respondent recognizes the effect of the provisions of the lease, but principally contends that by its acts the Railway Company has waived its right to rely upon these provisions. In his brief respondent states this contention as follows, "the real question in this case is whether or not the forfeiture of the elevator was waived by the railroad company". Closely akin to this contention of waiver is the contention that the railway company asserts no ownership of the elevator at the present time. This contention

is based upon the testimony of Mr. Ellington, the company real estate agent, who conducted all proceedings concerning this property. In response to a question of whether the railway company takes the position that it now owns the property, Mr. Ellington answered, "No. That is a legal question". In the light of Mr. Ellington's entire testimony the significance which respondent wishes to attach to this answer fails, He had testified prior to the question and answer relied upon by respondent, that in conversation with respondent he had asserted ownership in the company, and that respondent recognized such ownership. In his testimony he also identified the letter written by him to respondent wherein he stated, "The point I am making is that the structures are now the property of the Milwaukee Railroad." The record is clear that the Company claims to own the building, and the only significance we attach to the answer of Mr. Ellington upon which reliance is placed is that in his judgment the question of ownership has, by virtue of this action, become a legal question which must be determined.

 In the statement of facts we have set forth in detail the facts upon which it is claimed the railway company waived its right to rely upon the provisions of the lease which provided for an abandonment of the property to the company in the event of failure to remove before the lease terminated. It should be noted that the first act upon which respondent relies occurred on November, 1939, consisting of the letter advising respondent that the company considered the elevator a fire hazard and that unless removed the company would cause its removal. This act occurred more than nine months after the lease terminated, and other acts upon which reliance is placed were subsequent thereto. It is apparent therefore, that no act of the company caused respondent to delay the removal of the building until after the expiration of the lease. The lease expired and rights became fixed months before the occurrence of any act of the company upon which the claim of waiver is predicated. No element of estoppel is present. An estoppel arises, where, by conduct or acts, a party has been induced to alter his position or do that which

he would not otherwise have done, to his prejudice. Lehman v. Smith et al., 40 S. D. 556, 168 N. W. 857; Hood v. Sioux Steel Co., 67 S. D. 1, 287 N. W. 636. As stated by this court, " 'Waiver' is where one in possession of any right, whether conferred by law or by contract, and of full knowledge of the material facts, does or forbears the doing of something inconsistent with the existence of the right or of his intention to rely upon it." Noem v. Equitable Life Ins. Co. of Iowa, 37 S. D. 176, 157 N. W. 308, 309; Wieczorek v. Farmers' Mut. Hail Ins. Ass'n, 61 S. D. 211, 247 N. W. 895. In the absence of acts constituting an estoppel there must be a clear, unequivocal and decisive act or acts showing an intention to relinquish the existing right. 67 C. J. 306, 27 R.C.L. 909. As disclosed in the statement of facts the acts upon which respondent principally relies as showing an intention to relinquish the right the company had under the lease, consist of negotiations relating to the releasing of the premises and the re-acquisition of the building by respondent. These negotiations were typical of those that often transpire when an attempt is made to reacquire property lost by reason of some judicial process or otherwise, and in the light of the company's unequivocal statement in its letter of March 11, 1940, that "the structures are now the property of the Milwaukee Railroad", it cannot successfully be contended that these negotiations indicate an intention on behalf of the company to forego the rights it had acquired under the lease. Nor is there anything inconsistent with the rights the company acquired under the lease in its letter advising respondent that the buildings were a fire hazard and unless removed within thirty days they would be removed by the company. If the company chose to grant to respondent the privilege of removing these buildings within the time specified in the letter ,it had a right so to do under the rights it had acquired by virtue of the lease. Obviously the payment of the rent by respondent in the amount of $48.75 was recognized by all parties as a payment only to the time the lease was canceled by the company, and as such indicates, if anything, that all parties recognized the effect of the cancellation of the lease, and

the desire to abide by such cancellation. We find nothing in the record constituting clear, unequivocal and decisive acts indicating an intention on behalf of the company to waive the provisions of the lease; to the contrary the unequivocal statements of the company to respondent indicate an intention to rely upon the rights acquired under the lease due to the failure of respondent to remove the building before the lease was terminated by virtue of the sixty-day notice.

The judgment appealed from is reversed.

All the Judges concur.