**In re Jason Ray DAVIS and Linda Kay Davis, d/b/a Bar D Bar Ranch, a sole proprietorship, Debtors.**

**Bankruptcy No. 384–00048.**

United States Bankruptcy Court, D. South Dakota.

July 31, 1984.

---

Max A. Gors, Gors, Braun & Carlon, Pierre, S.D., for debtors Jason Ray Davis and Linda Kay Davis, d/b/a Bar D Bar Ranch, a sole proprietorship.

Brent A. Wilbur, May, Adam, Gerdes & Thompson, Pierre, S.D., for Secured Creditor BankWest, N.A., of Pierre, South Dakota.

## MEMORANDUM DECISION

PEDER K. ECKER, Bankruptcy Judge.

The above-entitled debtors filed a chapter 11 petition in bankruptcy on May 31, 1984. *See* 11 U.S.C. § 1101, *et seq.* The State Circuit Court for the Sixth Judicial Circuit entered Findings of Fact and Conclusions of Law and an Order for Delivery of certain items of the debtors' personal property on May 17, 1984, in favor of the secured creditor, BankWest, N.A., of Pierre, South Dakota (bank). *See* S.D.C.L. chapter 21–15 (1979) (entitled "Claim and Delivery of Personal Property"). The debtors were served with a Writ of Execution and Notice of Levy on May 18, 1984. Pursuant to the State Court Order, the bank took possession of some of the debtors' cattle, grain, machinery, and hay. The cattle, some grain, and at least part of the hay were sold on or about May 24, 1984, with the proceeds subsequently being applied to the cost of repossession and sale and the balance credited against the debtors' obligation to the bank. The machinery was scheduled to be sold at auction on June 2, 1984, but the sale was stayed when the debtors filed for bankruptcy. 11 U.S.C. § 362.

The debtors filed a motion for enforcement of the automatic stay, for turnover of property, and for the use of cash collateral on June 11, 1984. *See* 11 U.S.C. §§ 362, 542, and 363. Specifically, the debtors requested: (1) that the Court order an expedited preliminary hearing; (2) that the bank be prohibited from selling machinery and hay that had been levied on but not sold; (3) turnover of the machinery and hay repossessed by the bank; (4) a determination that the bank was not entitled to a prepetition setoff of the debtors' bank accounts; (5) turnover of the proceeds from the sale of the debtors' grain, livestock, and hay; and (6) use of the proceeds of the grain, livestock, and hay as cash collateral. The Court granted the debtors' request for an

expedited preliminary hearing and the same was held on June 19, 1984. *See* 11 U.S.C. § 363(c)(3); Local Rule of Bankruptcy Procedure 15; *In re Sheehan,* 38 B.R. 859, 861–62 (Bkrtcy.D.S.D.1984).

The bank appeared at the June 19 hearing and resisted the debtors' motion, contending that the collateral repossessed by the bank but not yet sold or otherwise disposed of was only property of the bankruptcy estate, if at all, to the extent that the debtors had a right of redemption under S.D.C.L. § 57A–9–506 (1980). *See* 11 U.S.C. § 541. The bank also insists that the proceeds of the collateral already sold and applied against the debtors' indebtedness are not property of the estate, not cash collateral, and, therefore, not subject to turnover. *See* 11 U.S.C. §§ 541, 363(a), and 542(a). The bank argues that its setoff of the debtors' checking accounts occurred prepetition, did not violate 11 U.S.C. § 553, and was authorized under state law.

Initially, it should be noted that actions for turnover, injunctive relief, and declaratory judgments are "adversary proceedings" under the Federal Rules of Bankruptcy Procedure and are properly commenced by filing a complaint, not by motion. Bankr.R.P. 7001, *et seq.* To the extent that the debtors request injunctive, turnover, and declaratory relief, they have improperly brought these matters by motion rather than by complaint. The bank, however, has not objected to the. defective procedure, and, considering the parties' immediate need for a determination of the issues, the Court will not raise an objection on its own motion.

The seminal authority on what constitutes property of a bankruptcy estate under 11 U.S.C. § 541 and what property is subject to turnover under 11 U.S.C. § 542(a) is the recent United States Supreme Court decision, *United States v. Whiting Pools, Inc.,* 462 U.S. 198, 103 S.Ct. 2309, 76 L.Ed.2d 515 (1983), *affirming* 674

F.2d 144 (2d Cir.1982). *Whiting Pools* establishes several principles. One, a reorganization estate includes property of the debtor that has been seized by a creditor prior to the filing of a petition for reorganization. Second, Congress intended that a broad range of property be included in the bankruptcy estate, including property in which a secured creditor has an interest, in order to further the goal of encouraging the reorganization of financially troubled enterprises. Third, the broad statutory language of 11 U.S.C. § 541, to the effect that the estate includes "all legal or equitable interests of the debtor in property as of the commencement of the case," includes any property made available under 11 U.S.C. § 542(a) (turnover). Fourth, a broad interpretation of 11 U.S.C. §§ 541 and 542(a) is supported by the legislative history of the new Bankruptcy Code, consistent with prior case law, and furthers the Congressional intent of encouraging reorganization by not depriving the rehabilitating debtor of assets necessary for reorganization. Fifth, 11 U.S.C. § 542(a) does not allow the debtor in possession to recover property seized by a creditor where ownership of the property has been transferred under state or federal law. Finally, a secured creditor retains its status and maintains its lien in property turned over to the debtor and, consequently, has a right to adequate protection of its interests in the property.

■ The Court, based on the reasoning employed in *Whiting Pools* and the applicable provisions of South Dakota's version of Article 9 of the Uniform Commercial Code (U.C.C.), is convinced that the proceeds from the sale of the debtors' grain, cattle, and hay applied to the debtors' indebtedness prior to the filing of the bankruptcy petition are not property of the bankruptcy estate, not cash collateral, and not subject to turnover. *See* S.D.C.L. § 57A–9–504(4) (Supp.1983); [1] S.D.C.L. § 57A–9–506 (1980); 11 U.S.C. §§ 541, 363, and 542.

---

**1.** When collateral is disposed of by a secured party after default, the disposition transfers to a purchaser for value all of the debtor's rights therein, discharges the security interest under which it is made and any security interest or lien subordinate thereto. The purchaser takes free of all such rights and interests even though the secured party fails to comply with the requirements of this part or of any judicial proceedings

The status of the debtors' machinery and hay, seized by the bank but not disposed of prior to bankruptcy, presents a more difficult question.[2] That question, simply stated, is whether the bank obtained title to or ownership of the machinery or hay under the State Court Order for Delivery of the property or under Part 5 of S.D.C.L. chapter 57A–9 (1980). South Dakota's claim and delivery statutes speak to obtaining possession. *See* S.D.C.L. chapter 21–15 (1979). The applicable case law clearly indicates that a secured creditor who obtains possession of collateral under South Dakota's claim and delivery statutes does not receive title to or ownership of the collateral, but merely possession. *Aalseth v. Simpson,* 57 S.D. 118, 231 N.W. 289 (1930); *Eads v. Wagner,* 35 S.D. 547, 153 N.W. 302 (1915); *Dixson v. Ladd,* 32 S.D. 163, 142 N.W. 259 (1913); *Roberts v. Mooney,* 65 S.D. 287, 273 N.W. 378 (1937); *Babcock v. McKee,* 70 S.D. 442, 18 N.W.2d 750, 753 (1945).

The State Court Order requiring delivery of property speaks to the bank obtaining possession to exercise its rights upon the debtors' default under the U.C.C. A careful reading of Part 5 of S.D.C.L. chapter 57A–9 and the related official comments to the U.C.C. indicates that a repossessing creditor does not obtain ownership or title to seized property, but rather addresses the creditor as a "secured party in possession." *See* S.D.C.L. § 57A–9–501, *et seq.* (1980 and Supp.1983). Dictum in *Whiting Pools, supra* at 2314–16 and n. 14, supports this conclusion.

Although S.D.C.L. § 57A–9–506 (1980) gives the owner of seized collateral the right to redeem repossessed collateral by paying the full amount of the related debt and repossession costs at any time before the collateral is disposed of, this is pre-disposition redemption or redemption from possession, not sale. S.D.C.L. § 57A–9–506 (1980) does not provide for post-sale redemption of personal property. This is in sharp contrast with post-sale redemption like that provided in the case of foreclosure of real property mortgages. *See* S.D.C.L. chapter 21–47 (1979); S.D.C.L. chapter 21–52 (1979). The difference between redemption as contemplated by S.D.C.L. § 57A–9–506 (1980), where the debtor retains ownership and has no post-sale redemptive rights, and redemption under S.D.C.L. § 21–52–1, *et seq.* (1979), where the purchaser at the foreclosure sale is automatically entitled to a sheriff's deed if no redemption is made within one year, makes the recent decision of *Johnson v. First National Bank of Montevideo, Minnesota,* 719 F.2d 270 (8th Cir.1983) inapplicable to the instant case.[3]

Accordingly, based on the foregoing analysis, the debtors' machinery and hay seized, held, but not disposed of on the date the instant bankruptcy petition was filed are owned by the debtors, are property of the bankruptcy estate, and must be turned over to the debtors. The bank, however, retains its lien and remains a secured creditor and is entitled to request and receive adequate protection for its interests in the property. *See* 11 U.S.C. §§ 361, 362(d)(1), and 363(e).

The Court finds no merit in the debtors' allegation that the bank improper-

(a) In the case of a public sale, if the purchaser has no knowledge of any defects in the sale and if he does not buy in collusion with the secured party, other bidders or the person conducting the sale; or

(b) In any other case, if the purchaser acts in good faith.

**2.** Actually, a secured party in possession has two options of disposing of repossessed collateral. First, the property may be sold at a public or private sale in accordance with S.D.C.L. § 57A–9–504 (Supp.1983). Second, the creditor may keep the collateral in full satisfaction of the debt if he notifies the debtor of his intention to

do so under S.D.C.L. § 57A–9–505 (Supp.1983). Either option, if properly executed, would preclude turnover under 11 U.S.C. § 542(a).

**3.** The Court's conclusion that the debtors retain ownership of the property seized but not sold and that an 11 U.S.C. § 542 turnover preempts the effect of S.D.C.L. § 57A–9–506 (1980) by depriving the secured party of possession and thereby eliminating the redemption requirements under the Uniform Commercial Code is in conflict with *In re Anderson,* 29 B.R. 563 (Bkrtcy.E.D.Va.1983). This Court, however, must respectfully disagree with the conclusion reached by the Virginia Bankruptcy Court.

ly offset funds in the debtors' checking accounts against existing debts prepetition. Section 553 of the Bankruptcy Code does not preclude, but rather recognizes, prepetition setoffs to the extent contemplated by state law, and the automatic stay mandated by 11 U.S.C. § 362 does not preclude a prepetition setoff. 11 U.S.C. § 553; 4 *Collier on Bankruptcy* ¶ 553.05[1] (15th ed. 1979). The only relevant testimony in the record relating to the bank's offsetting the debtors' checking accounts is the uncontradicted statement by a bank officer stating that the setoff and subsequent application of the proceeds to the debtors' indebtedness occurred prior to May 31, 1984, the date the bankruptcy petition was filed. Therefore, applying the *Whiting Pools* analysis, *supra*, there can be no doubt that the funds offset are not property of the estate, not cash collateral, and not subject to turnover. The fact that some of the funds in the affected accounts may have been proceeds from social security checks does not change the result.

### Conclusion

The proceeds from collateral repossessed and sold and subsequently applied to existing debts prior to the filing of the instant bankruptcy are not property of the estate, not cash collateral, and not subject to turnover. The machinery and hay repossessed prepetition, but not disposed of at the time of the filing of the bankruptcy petition, are property of the estate and must be turned over to the debtors. The bank, however, may request and must receive adequate protection for the debtors' sale, lease, or use of the turned over property. The bank did not improperly offset the debtors' checking accounts and the amounts offset are not property of the estate and not subject to turnover.

This Memorandum Decision constitutes the Court's Findings of Fact and Conclusions of Law in the above-entitled matter pursuant to Bankr.R.P. 7052 and 9014 and F.R.Civ.P. 52. Counsel for the bank is directed to submit a proposed Order and Judgment, consistent with the Court's Findings of Fact and Conclusions of Law, in accordance with Bankr.R.P. 9021 and

furnishing copy thereof to counsel for the debtors at time of submission. The Order and Judgment must be submitted to the Clerk of this Court forthwith.