**In re Mervin Richard MEWES and Doris Louise Mewes, d/b/a Ranchers, Debtors.**

**Mervin Richard MEWES and Doris Louise Mewes, Plaintiffs,**

v.

**BANKWEST OF SOUTH DAKOTA, Defendant.**

**Bankruptcy No. 385–00043.
Adv. No. 385–0022.**

United States Bankruptcy Court, D. South Dakota.

March 5, 1986.

See also 56 B.R. 108.

---

John Harmelink, Harmelink Law Offices, Yankton, S.D., for debtors/plaintiffs.

Brent A. Wilbur, May, Adam, Gerdes & Thompson, Pierre, S.D., for defendant.

## MEMORANDUM DECISION

PEDER K. ECKER, Bankruptcy Judge.

### I. Introduction

This matter is before the Court on a complaint for violation of automatic stay and for turnover of property to the estate filed on behalf of Mervin Richard Mewes and Doris Louise Mewes ("Debtors") by Attorney Thomas M. Tobin, Aberdeen, South Dakota, on June 4, 1985. Debtors substantively allege that: 1) BankWest's offset of their ranch checking account violated the automatic stay provisions as provided by Bankruptcy Code Section 362(a); and 2) Because BankWest's offset was "willful," the debtors are entitled to damages as provided by Bankruptcy Code Section 362(h). Attorney Tobin subsequently withdrew and Attorney John Harmelink was approved as the attorney of record on August 2, 1985. Attorney Brent A. Wilbur represented BankWest. A hearing was held on September 10, 1985, in Pierre, South Dakota.

### II. Background

Debtors are ranch operators in Highmore, South Dakota. On April 10, 1985, at 8:40 a.m., Debtors filed for relief under Chapter 11 of the Bankruptcy Code.

On this date, the debtors had three different accounts at BankWest. Included was a savings account, a ranch checking account, and a corporate checking account. On the morning of April 10, 1985, the debtors had $790.29 in their savings account, $15,763.98 in their ranch account, and $75.00 in their corporate account. The ranch account represented proceeds from a March, 1985, consignment auction sale of livestock.

Early that afternoon, Mr. Charles Benson, an investigator with the Tobin firm, set out to close the debtors' BankWest accounts. He was acting on orders of the firm. Upon completion, he was to return to the firm with a cashier's check which was going to be deposited in the debtor-in-possession account.

To complete this assignment, he first flew from Aberdeen to Highmore, South Dakota, and met Mrs. Mewes at the airport. She presented him with three checks. Two of the checks were drawn on the ranch account, including a check made payable to Charles Benson for approximately $17,000 and a check made payable in blank. The third check was drawn on the corporate account for $75.00.

Mr. Benson next flew to Pierre, South Dakota, which is the location of BankWest. When he entered BankWest, he approached a teller's window and presented both the $17,000 check payable to him and the $75.00 corporate check. Because of insufficient funds, the teller informed Mr. Benson that only the check drawn on the corporate account may be cashed. He left the bank and contacted Mrs. Mewes by telephone and explained the problem.

After confirming by telephone that there was over $15,000 in the ranch account, Mrs. Mewes contacted Mr. Benson and they agreed that the check made payable in blank should be made payable to Charles Benson for $15,000 and then cashed.

At approximately 4:10 p.m., Mr. Benson again returned to BankWest. When he entered, he approached another bank teller. Checking with the computer, the bank teller informed Mr. Benson that the debtors' checking accounts were on "hold" and that he would have to speak with a bank officer for further transactions. At the hearing, a checking account "hold" was explained as a daily monitoring of checks which would not be paid on until approved by a BankWest officer charged with monitoring that account. BankWest alleged the right to do this based on its signature card.

When contacted by the bank teller, Mr. Jack Lynass, an executive vice president of BankWest, came out and spoke with Mr. Benson. Details of the conversation are subject to some dispute. Mr. Benson represented that, after informing Mr. Lynass that he was "Charles Benson" and works for the Tonner and Tobin law firm, he then told him the debtors had filed for Chapter 11 protection earlier that morning in Sioux Falls and his purpose was to close their accounts at BankWest. Other than a comment that there was apparently nothing more that he could do, he also insists that nothing more was said by either of the parties. On the other hand, Mr. Lynass contended that Mr. Benson only told him that the debtors were "contemplating reorganization" and, further, that he had already authorized another loan officer to set off the account and apply it to the debtors' note. Mr. Benson thereafter returned to Aberdeen, South Dakota.

During the afternoon of April 10, Bank-West offset the $16,629.57 in the ranch account against a note which had a principal balance of over $500,000 still owing. Mr. Lynass represented that, after being notified that someone was attempting to close the debtors' accounts, he immediately requested an offset of the debtors' account.

He insisted that this was in keeping with normal procedures because the debtors' closing of their accounts was outside any agreement or understanding which the parties may have had. Apparently, Mr. Lynass had been monitoring the debtors' accounts since March, 1985, with the understanding that the monies in the accounts would be used for payment of expenses arising from the March, 1985, livestock auction sale. BankWest never applied for relief from stay prior to the offset of the debtors' ranch account.

### III. Issues

The fundamental issues raised are:

1. Whether BankWest's offset of the debtors' ranch account violated the automatic stay's provisions as provided by Bankruptcy Code Section 362(a); and

2. If so, whether BankWest "willfully" violated the automatic stay under Bankruptcy Code Section 362(h).

### IV. Law

#### A. First Issue

As to the first issue, the Court finds that BankWest's offset of the debtors' ranch account violated the automatic stay provisions as provided by Bankruptcy Code Section 362(a).

Bankruptcy Code Section 362(a), in pertinent part, reads as follows:

(a) Except as provided in subsection (b) of this section, a petition filed under section 301, 302, or 303 of this title, or an application filed under section 5(a)(3) of the Securities Investor Protection Act of 1970 (15 U.S.C. 78eee(a)(3)), operates as a stay, applicable to all entities, of—

. . . .

(3) any act to obtain possession of property of the estate or of property from the estate or to exercise control over property of the estate;

. . . .

(7) the setoff of any debt owing to the debtor that arose before the com-

mencement of the case under this title against any claim against the debtor.

It is well settled that this provision of the automatic stay prohibits post-petition exercise of setoff but does not destroy the right to setoff of itself. *In re Raanes*, 17 B.R. 164, 166 (Bkrtcy.D.S.D.1982); *In re Conti*, 50 B.R. 142, 149 (Bkrtcy.E.D.Va.1985). *See also In re Sarkis*, 17 B.R. 174 (Bkrtcy.D.S.D.1982) (pre-petition setoff); *In re Davis*, 40 B.R. 934 (Bkrtcy.D.S.D.1984) (pre-petition setoff). Creditors, however, must file a motion for relief from stay in order to exercise setoff rights. *In re Conti*, 50 B.R. at 149; *United States v. Norton*, 717 F.2d 767, 773 (3d Cir.1983); *United States v. Powers*, 28 B.R. 86 (Bkrtcy.E.D.Pa.1983).

Conceding in its brief that no setoff exceptions under Section 362(b) apply, BankWest contends that, in view of the language in Bankruptcy Code Section 553(b)(1), that of *"on or* within 90 days before the date of the filing of the petition ...," the automatic stay does not apply for setoff purposes until the next day—here, not until April 11, 1985. Essentially, BankWest's argument is that it set off prior to the effective date of the automatic stay provisions and, therefore, Section 362 is not at issue. The Court finds this position untenable.

■ Under the Bankruptcy Code, the debtors are entitled to *automatic* relief from the time that they filed their petition. 11 U.S.C. §§ 301 and 362(a); *see also* 2 *Collier on Bankruptcy* ¶ 301.07 (15th ed.). Unless otherwise excepted, Section 362 provides that a petition filing under Section 301 operates as an *automatic* stay against further creditor actions and not one which begins the next day (emphasis added). 11 U.S.C. § 362(a); 2 *Collier, supra* at ¶ 362.-01. *See also In re Shriver*, 46 B.R. 626, 629 (Bkrtcy.N.D.Ohio 1985); *In re Miller*, 22 B.R. 479, 491 (D.Md.1982); *In re Eisenberg*, 7 B.R. 683, 686 (Bkrtcy.E.D.N.Y.1980).

BankWest cites Section 553(b) as standing for the proposition that, for purposes of setoff, the automatic stay provision does not become effective until the day after the petition filing. This ignores that Subsection (a) denotes Section 362 applicability. 11 U.S.C. § 553(a). Moreover, Subsection (b) only prescribes a creditor's setoff amount limits on or within 90 days of filing and not an additional one day exception to the automatic stay provisions. 11 U.S.C. § 553(b). *See In re Raanes*, 17 B.R. 164 (Bkrtcy.D.S.D.1982). No other authority was offered for this proposition.

■ No actual notice is required for the automatic stay to be effective. *In re Victoria Grain Co. of Minneapolis*, 45 B.R. 2 (Bkrtcy.D.Minn.1984), *citing as authority, Kalb v. Feuerstein*, 308 U.S. 433, 60 S.Ct. 343, 84 L.Ed. 370 (1940); *Carribbean Food Products, Inc. v. Banco Credito y Ahorro Ponceno*, 575 F.2d 961 (1st Cir.1978); *Zestee Foods, Inc. v. Phillips Foods Corp.*, 536 F.2d 334 (10th Cir.1976); *Meyer v. Rowen*, 181 F.2d 715 (10th Cir.1950); *Potts v. Potts*, 142 F.2d 883 (6th Cir.1944), *cert. denied*, 324 U.S. 868, 65 S.Ct. 910, 89 L.Ed. 1423 (1945), *In re Scott*, 24 B.R. 738 (Bkrtcy.M.D.Ala.1982); *In re Advent Corp.*, 24 B.R. 612, 614 (B.A.P. 1st Cir. 1982).

### Conclusion

Because the Court finds that the automatic stay provisions became effective at 8:40 a.m. on April 10, 1985, and that BankWest offset the $16,629.57 in the ranch account against a note after that time, the Court holds that BankWest violated the automatic stay provided by Bankruptcy Code Sections 362(a)(3) and (7). Because of this, the Court orders that the $16,629.57 be forthwith turned over to the debtors as property of the estate. *See* 11 U.S.C. § 542. The Court further orders that BankWest pay interest at the current rate on this amount from the date of petition filing and setoff.

### B. Second Issue

■ As to the second issue, the Court finds that BankWest's setoff was not "willful," and, therefore, the Court holds that the debtors are not entitled to any damages

as provided by Bankruptcy Code Section 362(h).

Bankruptcy Code Section 362(h) provides that:

"An individual injured by any willful violation of a stay provided by this section shall recover actual damages, including costs and attorneys' fees, and, in appropriate circumstances, may recover punitive damages."

Under this section, the Court holds that "willful" means either deliberate or intentional. *In re Tel-A-Communications Consultants, Inc.,* 50 B.R. 250, 253–54 (Bkrtcy. D.Conn.1985); *see also Mercer v. D.E.F., Inc.,* 48 B.R. 562 (Bkrtcy.D.Minn.1985). The question, therefore, becomes whether BankWest intentionally or deliberately offset the debtors' account after it knew that the debtors had filed for voluntary relief under Chapter 11 of the Bankruptcy Code.

 According to the hearing and other information provided in the files, the Court finds that:

1) BankWest had placed a "hold" on the debtors' ranch account in March, 1985, and monitored the account on a daily basis;

2) After Mr. Benson's first visit to BankWest, Mr. Lynass was made aware that someone was attempting to close the ranch account and requested that the funds in the account be offset against a note held by the bank;

3) BankWest had offset the account prior to Mr. Benson's second visit to the bank and his conversation with Mr. Lynass; and

4) BankWest, if at all, did not have notice of the debtors' filing for relief under Chapter 11 of the Bankruptcy Code until after it offset the funds in the account.

Because the Court finds that neither BankWest officers nor its employees had actual notice of the debtors' filing prior to its offset of funds in the ranch account, the Court holds that BankWest's offset action was neither deliberate nor intentional as required by Section 362(h). Therefore, the Court holds that the debtors are not entitled to damages as provided by Section 362(h).

Accordingly, based on the foregoing, this Memorandum Decision constitutes the Court's Findings of Fact and Conclusions of Law in the above-entitled matter pursuant to Bankr.R.P. 7052 and F.R.Civ.P. 52. Counsel for the debtors is directed to submit an appropriate order and judgment in accordance with Bankr.R.P. 9021.