Toby B. SHINE, Bernard C. Shine, and
Ernestine F. Shine, Appellees,

v.

STATE of Iowa and Iowa Conservation
Commission, Appellants.

No. 89–240.

Court of Appeals of Iowa.

May 24, 1990.

Thomas J. Miller, Atty. Gen., John P. Sarcone, Asst. Atty. Gen., and Michael H. Smith, Asst. Atty. Gen., for appellants.

John J. Greer of Greer, Montgomery, Barry & Bovee, Spencer, and Peter B. Narey of Narey, Clarity & Chozen, Spirit Lake, for appellees.

Heard by OXBERGER, C.J., and SCHLEGEL and HABHAB, JJ.

SCHLEGEL, Judge.

The State appeals a district court judgment quieting title as to certain riparian land in the Shines. We affirm the trial court.

The Shines are owners of land directly north of Lower Gar Lake. The Shines are direct successors from the original owner who received the lot by patent from the United States in 1873. Lower Gar Lake is owned by the State in trust for the public. In 1984, the State placed signs around twenty-two acres of land in or north of Lower Gar Lake. The State refused to remove the signs when requested to do so by the Shines. The Shines filed a petition to quiet title. The State, by an amended counterclaim, requested a declaratory judgment that the area in dispute be declared a part of Lower Gar Lake. On October 31, 1988, the district court entered judgment quieting title in the Shines and denying the counterclaim. The State appeals that judgment.

The State appeals the district court's conclusion that the ordinary high water mark of Lower Gar Lake is on the south side of the isthmus. The State contends that the district court erred by ruling that the Shines did not have to prove the location of the ordinary high water mark. According to the State, the Shines had the burden to establish the location of the ordinary high water mark, and that they failed to meet their burden. The Shines counter this contention by asserting that their burden was to establish record title and continuous unchallenged possession. The Shines claim that once they met this burden a presumption of ownership is created which the State has the burden to overcome. The Shines also claim that they met their initial burden and went further and proved the location of the ordinary high water mark.

Next, the State claims the district court erred by finding the ordinary high water mark to be located on the south side of the isthmus, because the finding is contrary to the evidence. Specifically, according to the State, the district court erred by: (1) finding that the disputed land is useful for agricultural purposes; (2) failing to find the elevation of the ordinary high water mark in relation to a vertical datum; (3) rejecting the State's evidence that the ordinary high water mark is 1397.6 feet above mean sea level; and (4) relying on a self-contradictory government survey plat. The Shines assert that the district court's finding was supported by the evidence.

Last, the State contends that the district court's finding that the channel through the isthmus is artificial was not supported by the evidence. The State claims that this issue is crucial to the determination of the location of the ordinary high water mark.

In this equity action, our review is de novo. Iowa R.App.P. 4. We have a duty to examine the entire record and adjudicate anew rights on the issues properly presented. *In re Marriage of Steenhoek*, 305 N.W.2d 448, 452 (Iowa 1981). We give weight to the fact findings of the trial court, especially when considering the credibility of witnesses, but are not bound by them. Iowa R.App.P. 14(f)(7).

■ The first issue for our determination is which party carries the burden to establish ownership of the land. The burden of proof is on a plaintiff in a quiet title

action and the plaintiff must quiet title on the strength of his own title and not rely on the weakness of another's. *Nielsen v. Stratbucker*, 325 N.W.2d 391, 392 (Iowa 1982). Possession is incident to ownership and, in the absence of evidence, is presumed to be in the owner. *Tilton v. Bader*, 181 Iowa 473, 481, 164 N.W. 871, 874 (1917). Presumptions are in favor of legal title, and to overcome these presumptions the evidence must be clear and convincing. *Sherbonday v. Surring*, 194 Iowa 203, 214, 188 N.W. 831, 835 (1922). The presumption of ownership which follows legal title can be overcome only by evidence which is clear and convincing. *Jeffrey v. Grosvenor*, 261 Iowa 1052, 157 N.W.2d 114, 122 (1968); *see also Wilcox v. Pinney*, 250 Iowa 1378, 1381, 98 N.W.2d 720, 722 (1959). The trial court was correct in placing the initial burden on the plaintiff to prove possession and title and, once established, to shift the burden to the defendant to prove by clear and convincing evidence that plaintiffs do not own the land.

■ Though the burden of proof was properly allocated by the trial court in this case, we find that the plaintiff clearly established ownership of the land. The State raises two other main issues regarding ownership of the land and several subissues as well. Upon our de novo review of the record we consider all of these issues to be part and parcel of the basic question of where the ordinary high water mark is to be found and will address them as such.

■ All of the evidence in the record points to the conclusion that the ordinary high water mark is located on the south side of the isthmus. High water mark means what its language imports—a (high) water mark. *State v. Raymond*, 254 Iowa 828, 830, 119 N.W.2d 135, 137 (1963). It is coordinate with the limit of the bed of the water; and that only is to be considered the bed which the water occupies sufficiently long and continuously to wrest it from vegetation and destroy its value for agricultural purposes. *Id.* The appellants claim that the land is not useful for agricultural purposes. There is sufficient evidence to support the contention that the land in question is useful for agriculture. It has been used for pasture in the past and will continue to be so used. Several witnesses testified that cattle have grazed on the land. In addition, vegetation useful for grazing was found by an expert witness. The expert testified that the vegetation growing on the land is a mixture of plants, some of which grow more readily in very wet areas and some of which will not grow in overly-wet areas. The conclusion reached by the expert as to the type of vegetation existing on the land supports Shine's contention that the ordinary high water mark is on the south side of the isthmus.

In addition to the agricultural use of the land, there are several other factors which clearly support Shine's position. The State claims the channel connecting the lake to the land should be considered navigable and also that it is a natural occurrence. The channel leading to the lake is only marginally navigable during high water seasons. In addition, the flow of water, when it exists, is from the land into the lake. Two experts testified that the isthmus has been in existence for thousands of years and the trial court specifically gave more weight to the testimony of those two experts. Plaintiff's experts also testified that the channel is artificial. There has also been a fence surrounding the area for many years and taxes have been paid on the land since 1881. Finally, the original owner acquired the land through a patent which clearly places legal title in the plaintiffs and which all titleholders have relied upon to maintain possession for over 100 years.

The facts in the record and the sheer equities involved require us to affirm the trial court. We affirm in toto.

AFFIRMED.

SACKETT, J., takes no part.