Robin PARSONS, Plaintiff
and Appellant,

v.

Michael DACY, Diane Dacy, Scott M. An-
shutz, Julie A. Anshutz, and Dacshutz,
Inc., d/b/a Mr. "G'S", and Ionia Klein,
Defendants and Appellees.

Michael DACY, Diane Dacy, Scott M. An-
shutz, Julie A. Anshutz, and Dacshutz,
Inc., d/b/a Mr. "G'S", Third–Party
Plaintiffs and Appellees,

v.

SOUTH DAKOTA LOTTERY, Third–
Party Defendant and Appellee.

17895.

Supreme Court of South Dakota.

Argued March 15, 1993.

Decided June 9, 1993.

William D. Wernke of Herman &
Wernke, Gregory, for plaintiff and appel-
lant.

Wally Eklund, Rick Johnson, and Stepha-
nie E. Pochop of Johnson, Eklund & Abour-
ezk, Gregory, for appellees Dacy, Anshutz
and Dacshutz.

Lawrence L. Piersol of Davenport, Ev-
ans, Hurwitz & Smith, Sioux Falls, for ap-
pellee Ionia Klein.

Lee M. Mc Cahren, Vermillion, for appel-
lee South Dakota Lottery.

MILLER, Chief Justice.

Lotto America held a drawing on April 6,
1991, for $12.4 million. A few days later,
the South Dakota Lottery Commission de-
clared Ionia Klein, of Gregory, South Dako-
ta, the owner of the winning ticket. Robin
Parsons (Robin), asserting her ownership
of the winning ticket, brought this action
against Klein and the owners of the busi-
ness which had printed the ticket. Robin
appeals the trial court's grants of the sum-
mary judgments against her. We affirm.

## FACTS

This is one of two cases argued before this Court during the March 1993 term, disputing the disposition of the proceeds of the now infamous winning Lotto America ticket printed at Mr. G's, a convenience store in Gregory, South Dakota.[1] This is not the first occasion we have had to consider issues raised by this lottery ticket, though with this action, it is the first occasion we have had to look at an individual's claim to ownership of the winning ticket.[2]

Robin, an employee of Mr. G's, printed a lottery ticket for a customer on Thursday, April 4, 1991, for the Saturday, April 6, drawing. The customer changed his mind and refused to buy the ticket. Robin placed it on the lottery terminal where she hoped she or any of Mr. G's other employees would sell it to another customer.[3] The ticket remained on the lottery terminal and was unsold at the time of the Saturday night drawing. The next morning, Klein, also an employee of Mr. G's, noticed the still unsold ticket on the lottery terminal was unsigned and was the winning ticket. She took possession of the ticket, signed, and presented it to the South Dakota Lottery Commission, claiming the prize. The Commission later declared Klein the owner of the winning ticket.[4] A few weeks after the drawing, Robin brought this action against Klein and the owners of Mr. G's

claiming ownership of the winning ticket based upon an asserted obligation for her to pay for the ticket.

Eventually, the defendants each moved for summary judgment. The trial court found no genuine issues of material fact and the motions were granted. The trial court determined that though Robin had printed the ticket, and it had remained unsold and unsigned at the time of the drawing, she had no obligation to purchase it. The trial court further determined that even if Robin was under an obligation to purchase the ticket, such an obligation was not of itself sufficient to give rise to a property interest in the winning ticket. Finally, the trial court determined Robin did not, and could not, satisfy the requirements for ownership of winning Lotto America tickets as articulated by the rules of the South Dakota Lottery Commission.

Robin appeals and, though she identifies four issues, we find it necessary only to review the trial court's determination that summary judgment in favor of the defendants was proper because Robin failed to raise genuine issues of material fact regarding her alleged obligation to purchase the winning Lotto America ticket.[5]

## DISCUSSION

The principles to be followed when granting or denying summary judgment are well

1. The other case is *Ron Parsons v. South Dakota Lottery Commission,* Nos. 17994 & 18039, 1993 WL 291416 (S.D.1993). Those defendants include the owners of Mr. G's, Ionia Klein and Robin Parsons who is the plaintiff in the instant case. Robin is not related to Ron Parsons.

2. *See Dacy v. Gors,* 471 N.W.2d 576 (S.D.1991).

3. The Retailer Manual issued by the South Dakota Lottery Commission emphasizes at page 6–2: "Lotto tickets refused by a customer, for any reason, or printed in error, should be sold to another customer. There are many cases in other lotteries of such tickets becoming *winning* tickets."

4. Five days after the lottery drawing the owners of Mr. G's brought an action against Klein asserting that they, not Klein, were the owners of the lottery ticket. The owners of Mr. G's sought declaratory and injunctive relief. The trial court denied the injunction which would have required the first year's proceeds of the lottery

winnings to be deposited with the court until such time as the determination of ownership of the winning ticket could be made. This court issued an alternative writ of mandamus to preserve the status quo in the circuit court action. We subsequently quashed our writ. *Dacy,* 471 N.W.2d 576. Following that decision, Klein and the owners of Mr. G's settled their dispute.

5. Robin raises possible issues of fraud and deceit, but the context in which these issues are raised is not clear. If she means to refer to fraud and deceit allegedly practiced upon her by these defendants or others, these issues do not appear to have been presented to the trial court and we will not address them for the first time on appeal. *Jennings v. Hodges,* 80 S.D. 582, 591, 129 N.W.2d 59, 64 (1964). If, on the other hand, she means to refer to alleged fraud and deceit regarding the ownership claims by these defendants or others, upon others, we note that such fraud or deceit does not strengthen Robin's claim to ownership which must stand on its own. *Babcock v. McKee,* 70 S.D. 442, 449, 18 N.W.2d 750, 753 (1945).

known and need not be stated again. *Wilson v. Great N. Ry. Co.*, 83 S.D. 207, 157 N.W.2d 19 (1968). "Our task on appeal is to determine only whether a genuine issue of material fact exists and whether the law was correctly applied. If there exists any basis which supports the ruling of the trial court, affirmance of a summary judgment is proper." *Gross v. Gross*, 491 N.W.2d 751, 752 (S.D.1992) (citations omitted).

■ Robin first contends the defendants have failed to show there is no dispute of material facts. This position can not be supported and, as the trial court said, it is now *Robin's burden* "to respond by identifying specific facts" which are in dispute. She "may not rest upon the mere allegations or denials of [her] pleading, but [her] response, by affidavit or as otherwise provided ... must set forth specific facts showing that there is a genuine issue for trial." SDCL 15–6–56(e). Further, "mere general allegations and denials which do not set forth specific facts will not prevent issuance of a judgment." *Breen v. Dakota Gear & Joint Co.*, 433 N.W.2d 221, 223 (S.D.1988). Robin puts heavy reliance upon her affidavit, which incorporates her complaint. We discount her affidavit to the extent it incorporates her complaint because summary judgment is not properly resisted simply by referring to the pleadings. *Dirks v. Sioux Valley Empire Elec. Ass'n*, 450 N.W.2d 426, 430 (S.D.1990).

■ The trial court frequently, and from our reading of the record, unsuccessfully, requested Robin to identify the specific facts upon which she was relying to defeat the motions for summary judgment. Although Robin asserts various "facts" are disputed, a disputed fact is not "material" unless it would affect the outcome of the suit under the governing substantive law in that a "reasonable jury could return a verdict for the nonmoving party." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248, 106 S.Ct. 2505, 2510, 91 L.Ed.2d 202, 212 (1986).

■ We conduct an independent review of the record since the trial court's factual findings are not binding upon this Court. *Koeniguer v. Eckrich*, 422 N.W.2d 600, 601 (S.D.1988). We conclude Robin's affidavit, submitted in opposition to the defendants' motions for summary judgment, contains "mere allegations and arguments and [is] devoid of any specific facts." *Western Cas. & Sur. Co. v. Gridley*, 362 N.W.2d 100, 102 (S.D.1985). Further, this Court, too, was unsuccessful in eliciting any specific material facts from Robin during oral argument before this Court regarding her claim to ownership of the winning ticket.

■ Following our decision in *Dacy*, Klein and the owners of Mr. G's entered into a settlement agreement regarding the division of the proceeds of the winning ticket. Robin claims neither Klein nor the owners of Mr. G's have good title to the winning ticket and have no right to split the proceeds. However, it is well settled that a person claiming property must rely on his or her own title or claim of right and cannot rely on defects in another's title or claims to the property. *Babcock v. McKee*, 70 S.D. 442, 449, 18 N.W.2d 750, 753 (1945). *See also Shine v. Iowa*, 458 N.W.2d 864, 866 (Iowa Ct.App.1990); *Mack v. Luebben*, 215 Neb. 832, 341 N.W.2d 335, 337 (1983). It follows therefore, that ownership disputes of other parties cannot create questions of fact regarding Robin's claim of ownership. We agree with the trial court that "whether Ionia Klein stole the ticket or not is immaterial. What's important for the purposes of this case is whether or not [Robin] has a legitimate claim, not whether Ionia Klein does."

Two weeks after the winning ticket was announced, Mr. G's drafted a "Statement of Store Policy Concerning Tickets." At the very beginning, and again at the end, the statement recites that it is meant to reflect the store policy which had been, and was, in effect during the time period in which the winning ticket was sold. Robin read and signed the statement which reflects that the *store* was responsible for refused tickets. She now takes issue with the timing of the policy statement, its con-

tent,[6] including whether there even was a policy,[7] and the statement's meaning. We find none of these "issues" raise questions of material fact as to whether Robin had an obligation to purchase unsold tickets printed by her. Indeed, her own words foreclose the possibility of such an obligation.

■ Robin states in her desposition that she knows of no instance when Mr. G's forced an employee to buy a refused ticket. She herself had never previously been forced to do so as this was the first time one of her customers refused to buy the ticket she printed. The affidavits of other employees of Mr. G's reveal instances where employees did buy unsold printed lottery tickets, but there is no testimony which supports the assertion that those employees had to do so. The only thing she had ever been told regarding printed and unsold lottery tickets was "you lay the ticket on top of the thing [lottery terminal] and we sell it to the customer."

Robin states she felt she "should" buy the refused ticket. She thought, or assumed, she had an obligation to buy the unsold ticket because "no one ever told me I was under no obligation to buy it myself." Towards the end of Robin's deposition, the following colloquy took place:

Q ... You earlier said that Cheryl Cerny [the manager of Mr. G's] did not tell you that you had to buy a ticket the customer refused?

A Right.

Q Did anybody else, anybody at all ever tell you that you had to buy tickets that a customer refused for any reason?

A No.

Q No?

A No.

Q Did somebody somehow give you the impression that you'd have to pay for 'em?

A It was shown by Cheryl Cerny when I learned. I figured when she had to buy the mistakes that came out when she did it, that that's just what we did.

Q Okay. But she didn't tell you that you had to buy it. True?

A True. She showed me in a way that you would assume that that's what the policy or practice was.

Q So apparently as you sit here today you're just assuming that there was some obligation?

A Right.

Q Nobody from the store at any time every told you that there was an obligation?

A No.

Reasonable minds have to conclude, from Robin's own testimony, that there is no factual basis for her asserted obligation to purchase unsold tickets which printed. Robin cannot rise above her own plainly stated testimony to claim a "better version of the facts than [s]he has given in [her] own testimony." *Darrt v. Berghorst,* 484 N.W.2d 891, 897 (S.D.1992). The trial court did not err when it concluded there were no genuine issues of material fact whether Robin had an obligation to purchase unsold lottery tickets which she printed.

Affirmed.

WUEST, HENDERSON, SABERS and AMUNDSON, JJ., concur.

6. Robin raises a question as to whether one line of type on the bottom of the first page of the policy statement she signed was actually on the copy she signed. However, its presence or absence is not a material fact as the "missing" line addresses the position of the store that it had not tried to make employees pay for unsold tickets and Robin herself testified in her deposi-

tion that she was unaware of any time the store may have tried to do so.

7. Robin states Mr. G's had no "policy." Rather, she engages in a semantic dispute that Mr. G's operated under a "practice and procedure." Such a characterization is a distinction without a difference.