**In re Preston D. REYNOLDS, Jr., Debtor.**

**Preston D. REYNOLDS, Jr., Plaintiff,**

**v.**

**N.C. STATE EMPLOYEES CREDIT UNION, Defendant.**

**Bankruptcy No. 80–02060–8 (NA). Adv. No. M–83–0101–AP.**

United States Bankruptcy Court, E.D. North Carolina.

June 20, 1983.

Herbert Frank Allen, Tarboro, N.C., for plaintiff.

Peter J. Sarda, Raleigh, N.C., and J. Russell Kirby, Wilson, N.C., for defendant.

MEMORANDUM OPINION

A. THOMAS SMALL, Bankruptcy Judge.

This matter is before the Court upon the complaint of Preston Douglas Reynolds, Jr., a chapter 7 debtor, seeking to recover the proceeds of his state employee retirement benefits which were taken by the Defendant State Employees' Credit Union to satisfy a discharged debt. A trial was held at Wilson, North Carolina, on May 13, 1983.

FACTS

The facts are not disputed.

On May 15, 1980 the Debtor executed and delivered to the State Employees' Credit Union ("Credit Union") a promissory note (Defendant's Exhibit No. 1) obligating the Debtor to pay $3,394.80 in thirty monthly installments of $113.16. The promissory note included "Collateral Retirement, Salary # 124C510047896 1975 Spider Conv. (Blue)."

The Debtor also executed a letter (Defendant's Exhibit No. 2) to the Teachers' and State Employees' Retirement System of North Carolina ("Retirement System") dated September 7, 1976 which said:

> Teachers' and State Employees' Retirement
> System of North Carolina
> P.O. Box 2629
> Raleigh, North Carolina 27611
>
> Gentlemen:
>
> You are hereby authorized and instructed to forward any checks covering benefits, whether total refund or monthly, that are due me, in care of the State Employees' Credit Union, P.O. Box 26927, Raleigh, North Carolina 27611.
>
> I am aware that such benefits will be made payable only to me, are unassignable, and exempt from levy, sale, garnishment, or attachment. Should I at any time desire to change this authorization, you shall be so notified by me in writing through the above named organization.
>
> Sincerely,
> /s/ Douglas Reynolds
> Retirement # 527829
> Date 9–7–76
> Social Security
> # 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

The Debtor also executed an undated letter (Defendant's Exhibit No. 3) addressed to the Defendant as follows:

> State Employees' Credit Union
> P.O. Box 26927
> Raleigh, North Carolina 27611
>
> Gentlemen:
>
> The Retirement System, of which I am a member, has been authorized to send any benefit check or checks as they may become due direct to your office for deposit to my credit. I have also advised them that any change rescinding that order will be filed through our Credit Union.
>
> You are instructed to deposit any such payments forwarded by the applicable Retirement System to my share account

except that, should I be obligated to the Credit Union for a loan when such payment or payments are received, then the loan account is to be credited and any difference credited to the share account.

Sincerely,

/s/ Douglas Reynolds

The promissory note was signed by the Debtor in connection with a loan made to the Debtor by the Credit Union. In making the loan, the Credit Union relied on the promissory note, the letter to the Retirement System and the letter to the Credit Union.

The Debtor filed a chapter 13 bankruptcy petition on September 17, 1980, but the case was converted to chapter 7 on June 28, 1982. The Credit Union had actual knowledge of the Debtor's bankruptcy and the indebtedness from the Debtor to the Credit Union was discharged by the chapter 7 order of discharge entered on September 20, 1982.

At the time the Debtor received the loan from the Credit Union and at the time the chapter 13 petition was filed the Debtor was employed by the Nash County Institute. That employment entitled the Debtor to participate in the State of North Carolina's Retirement System and to become a member of the State Employees' Credit Union. Within a few weeks after filing the chapter 13 petition, the Debtor's employment at the Nash County Institute terminated.

On October 26, 1982 the Debtor made application to the Retirement System to receive the $5,310.36 in retirement benefits to which he was entitled. Rather than sending the funds directly to the Debtor, the Retirement System, presumably acting in accordance with the Debtor's letter of September 7, 1976, transmitted funds to the Defendant. The Credit Union deposited the retirement funds in the Debtor's share account and proceeded to offset the share account to satisfy the Debtor's discharged indebtedness of $4,550.39. The Debtor previously claimed the state retirement benefits as exempt and initiated this adversary proceeding to recover the funds setoff by the Defendant.

DISCUSSION AND CONCLUSIONS

The Credit Union maintains that the loan documents created a valid security interest in the retirement funds on May 13, 1980, the date of the loan. The Debtor argues that the May 13, 1980 assignment of the retirement fund is invalid by virtue of North Carolina General Statute § 135-9 which provides:

> The right of a person to a pension, or annuity, or a retirement allowance, to the return of contributions, the pension, annuity or retirement allowance itself, any optional benefit or any other right accrued or accruing to any person under the provisions of this Chapter, and the moneys in the various funds created by this Chapter, are hereby exempt from any State or municipal tax, and exempt from levy and sale, garnishment, attachment, or any other process whatsoever, and shall be *unassignable* except as in this Chapter specifically otherwise provided. (Emphasis added).

■ The language of N.C.G.S. § 135-9 is clear and unequivocal. A person's rights to state employee retirement benefits in North Carolina are not assignable. Consequently, the Debtor's assignment of his rights in the Retirement System to the Credit Union is invalid and of no effect.

■ The Credit Union contends that when retirement benefits are paid to a former employee, the proceeds lose their identity as retirement benefits and become assignable. That may or may not be the case, but in any event, the Credit Union's invalid assignment of retirement benefits can not form the basis of a security interest in the retirement benefit proceeds.

Finally, the Credit Union argues that it acquired a lien on the retirement fund proceeds when the proceeds were deposited into the share account by virtue of N.C.G.S. § 54-109.59 which provides:

> The credit union shall have a lien on the shares, deposits and accumulated dividends or interest of a member in his individual, joint or trust account, for any

sum past due the credit union from said member or for any loan endorsed by him.

N.C.G.S. § 54–109.59 gives credit unions the opportunity to obtain a lien on their borrowers' funds but the lien is not complete until the deposit is actually made. In this case, the deposit was made more than two years after the Debtor's chapter 13 petition. The Credit Union's claim was discharged and the Credit Union could not acquire a N.C.G.S. § 54–109.59 lien after September 17, 1980, the date of the Debtor's chapter 13 petition. 11 U.S.C. § 524(a)(2) says that a discharge

> operates as an injunction against the commencement or continuation of an action, the employment of process, or any act, to collect, recover or offset any such debt as a personal liability of the debtor, or from property of the debtor, whether or not discharge of such debt is waived.

When the Credit Union applied the post-bankruptcy share account deposit to satisfy its pre-bankruptcy dischargeable debt, the Defendant violated the discharge injunction's prohibition against collecting or offsetting discharged debts from or against property of the Debtor. Consequently, the Debtor is entitled to recover the amount so applied.

An appropriate order shall be entered.