In re The CHARTER COMPANY,
et al., Debtors.

CHARTER CRUDE OIL
COMPANY, Plaintiff,

v.

ENRON OIL TRADING AND TRANS-
PORTATION COMPANY, f/k/a P
& O Falco, Inc., Defendant.

Bankruptcy Nos. 84–289–BK–J–GP
through 84–332–BK–J–GP.
Adv. No. 86–66.

United States Bankruptcy Court,
M.D. Florida,
Jacksonville Division.

May 16, 1988.

James H. Post, Jacksonville, Fla., for plaintiff.

E. Robert Meek, Jacksonville, Fla., for defendant.

## FINDINGS OF FACT AND CONCLUSIONS OF LAW

GEORGE L. PROCTOR, Bankruptcy Judge.

Plaintiff, Charter Crude Oil Company ("Charter"), instituted this proceeding pursuant to § 542(b) of the Bankruptcy Code against defendant, P & O Falco, Inc. ("Falco"),[1] seeking turnover of a debt in the principal amount of $437,779.70, and accrued interest of $300,950.36 for the period from May 21, 1984, through March 15, 1988. Falco defends that it is not indebted to Charter by virtue of a setoff for $744,-991.68 taken in June, 1984, and, instead, has an unsecured claim of $307,211.98.

On March 26, 1988, Charter instituted this adversary proceeding. On October 1, 1986, Falco filed its answer to the complaint and included an affirmative defense of setoff. The adversary proceeding was consolidated for trial with Charter's objec-

tion to Falco's second amended proof of claim (Claim No. 2116).

The trial was held February 10, 1988. At the trial, the only evidence offered by the parties was a Joint Stipulation of Facts (the "Stipulation") and an interest rate index published by the Texas Consumer Credit Commission. Both parties then agreed to submit post-trial briefs.

The Court, having considered the evidence and briefs, makes the following findings of fact and conclusions of law:

### FINDINGS OF FACT

1. Both before and after April 20, 1984, (the "Petition Date"), Charter and Falco entered into a series of transactions involving the purchase and sale of crude oil.

2. As a result of the prepetition transactions, Charter owed Falco $744,991.68 (the "Charter Debt") and Falco owed Charter $378,779.70. Conversely, as a result of postpetition transactions, Falco owed Charter an additional $59,000 (the "Falco debt").

3. Each of the contracts by which Charter sold product to Falco provided that past due amounts "shall bear interest at the maximum contractual rate." Similarly, each of the outstanding invoices sent to Falco under these contracts provide that "[I]nterest at the maximum lawful rate will be charged on past due accounts."

4. In June of 1984, Falco attempted to setoff the Falco Debt against the Charter Debt by making certain bookkeeping entries in Falco's financial records.[2]

5. Falco did not obtain Court approval before exercising the right to setoff.

### CONCLUSIONS OF LAW

1. The legal issues in this adversary proceeding are governed by the applicable

---

1. On February 10, 1988, 82 B.R. 602, the Bankruptcy Court entered an order substituting Enron Oil Trading and Transportation Company ("Enron"), the purchaser of Falco's assets and liabilities, as the proper defendant in this adversary proceeding.

2. A setoff typically occurs when a creditor (i) decides to exercise the right to setoff, (ii) takes some action to accomplish the setoff, and (iii)

prepares some record, usually in the creditor's financial books, which evidences the setoff. *In re Lee*, 40 B.R. 123, 126 (Bkrptcy.E.D.Mich. 1984); *In re Davis*, 29 B.R. 652, 654 (Bkrptcy.W. D.N.Y.1983). The authority to assert setoff is derived from § 553 of the Bankruptcy Code. That section permits a creditor to offset a mutual debt owing to the debtor which arose prior to the commencement of the bankruptcy case.

provisions of the Bankruptcy Code, 11 U.S.C. § 101 *et seq.*, and the laws of the state of Texas.

2. In this proceeding, there is no dispute that the parties owe each other mutual pre-petition debts and that Falco could, but for § 362(a)(7), offset the amount Charter owes it against its claim.[3]

Instead, the dispute in this proceeding centers on whether a creditor can assert the right of setoff as an affirmative defense in a § 542(b) action without first obtaining relief from the automatic stay. Plaintiff contends that Falco's failure to obtain relief is a forfeiture of that right.

3. The automatic stay provisions set forth in § 362(a) of the Bankruptcy Code are the heart of bankruptcy relief and provide debtors with essential protection. It stops all creditor collection efforts, and gives the debtor a reasonable pause so it may organize its affairs. *See, U.S. v. Norton,* 717 F.2d 767 (3d Cir.1983).

4. Section 362(a)(7), by its express terms, prohibits a creditor from taking a setoff without first obtaining relief from the automatic stay. That section reads:

[A] petition ... operates as a stay, applicable to all entities, of ... the setoff of any debt owing to the debtor that arose before the commencement of the case under this title against any claim against the debtor.

Most courts would hold, including this one, that a setoff taken without prior Court approval constitutes a violation of the automatic stay. *See e.g., U.S. v. Norton,* 717 F.2d 767 (3d Cir.1983); *In re Rinehart,* 76 B.R. 746, 755 (Bkrptcy.D.S.D.1987); *In re Lessig Construction, Inc.,* 67 B.R. 436, 443–444 (Bkrptcy.E.D.Pa.1986); *In re*

*Mewes,* 58 B.R. 124, 127 (Bkrptcy.D.S.D. 1986).

5. However, when setoff is asserted in defense to a debtor's own complaint, many courts permit such defense without the need of obtaining prior relief from the stay. For example, in *In re Fulghum Construction Corp.,* 23 B.R. 147 (Bkrptcy.M.D. Tenn.1982), the defendant was permitted to setoff payments it made to subcontractors on the debtor's behalf despite having failed to obtain relief from the stay. The Court reasoned that the violation of the automatic stay was more appropriately the subject of sanctions rather than an outright forfeiture of the defendant's defense.[4]

Similarly, in *Butz v. Champaign Landmark, Inc.,* 33 B.R. 926 (Bkrptcy.S.D.Ohio 1983), the Court permitted the setoff of certain quantity discounts earned on prepetition purchases against the debtor's account. Explained the Court:

[A]s the plaintiff does not challenge the existence of a right of setoff, and the evidence reveals no prejudice to the rights of the trustee because of the violation of the post-petition transfer, neither sanctions nor denial of the claim of the defendant appear warranted because the right of setoff to the extent recognized by the Bankruptcy Code and 11 U.S.C. § 553 would not have been contested by the Plaintiff if a request for relief from the stay had been duly prosecuted by the defendant.

*Id.* at 930.

6. This plaintiff wants the Court to punish the defendant for failing to obtain relief from the stay. There has been no challenge to the existence or mutuality of the prepetition debts. Additionally, both sides have effectively stipulated that but for § 362(a)(7), Falco would be entitled to set-

---

3. On December 18, 1986, this Court entered an order confirming Charter's Fourth Amended Plan of Reorganization. Pursuant to § 524 of the Code and the terms of the Confirmation Order, a permanent injunction prohibiting setoffs without Court approval replaced the automatic stay provisions of § 362. The substitution of the permanent injunction for the automatic stay provisions has no effect in this proceeding. *See e.g., In re Reynolds,* 31 B.R. 296, 299 (Bkrptcy.E.D.N.C.1983).

4. The filing of a petition in bankruptcy does not defeat a creditor's right of setoff. Instead, it merely stays its enforcement pending an orderly examination of the parties' rights. H.R.Rep. No. 95–595, 95th Cong., 1st Sess. 342 (1977); S.Rep. No. 95–989, 95th Cong., 2d Sess. 50–51 (1978), U.S.Code Cong. & Admin.News 1978, p. 5787.

off the amount owed Charter against Charter's account.

■ 7. The Court concludes that the failure to obtain relief from the stay to assert setoff should not now defeat Falco's position. Had Falco properly moved for relief from the stay to assert its defense, the Court probably would have granted relief—perhaps without contest. The Court finds that there is no prejudice to the plaintiff in allowing Falco to assert this defense.

■ In making this determination, the court recognizes that it has broad equitable discretion in deciding whether to permit setoff. *See In re Elsinore Shore Associates*, 67 B.R. 926, 939 (Bkrptcy.D.N.J.1986); *U.S. v. Norton*, 717 F.2d 767, 772 (3d Cir. 1983). "The broad equitable discretion of courts in recognizing setoff rights defined by the common law has been carried over to the Bankruptcy Reform Act of 1978, particularly to Section 553 ..." *Id.* 717 F.2d at 772. *See also, Cumberland Glass Mfg. Co. v. DeWitt*, 237 U.S. 447, 455, 35 S.Ct. 636, 639, 59 L.Ed. 1042, 1046 (1915); *In re Southern Industrial Banking Corp.*, 809 F.2d 329, 332 (6th Cir.1987); *Bohack Corp. v. Borden, Inc.*, 599 F.2d 1160, 1165 (2nd Cir.1979). The Court finds it appropriate to apply such discretion in this factual context and allow the defendant the opportunity to defend the suit on the merits and to assert affirmative defenses.

8. The Court now must consider the extent of liability of each party. First, plaintiff contends that Falco's claim against it is limited under § 502(b) to the amount owed on pre-petition obligations.

Section 502(b)(2) provides that the filing of the petition bars a claim for unmatured interest. Thus, Falco's claim is limited to the $744,991.68 in pre-petition obligations

due and owing from Charter without an adjustment for interest.

■ Plaintiff's other contention is not so easily disposed of. Plaintiff argues that it is entitled to the full amount of its claim plus accrued interest under § 542(b). That section provides: "an entity that owes a debt that is property of the estate and that is matured, payable on demand, or payable on order, shall pay such debt to, or on the order of, the trustee, except to the extent that such debt may be offset under section 553 of this title against a claim against the debtor." If the obligor fails to pay in accordance with this mandate, then the debtor may, if permitted under state law, assert a claim for prejudgment interest.[5]

If plaintiff's second argument were correct, it could theoretically sit on its claim and allow interest to accumulate to the point where it ultimately exceeds the amount owed Falco. This in turn, would have the effect of wiping out the full amount of Falco's claim. Surely such a result could not have been intended.

Creditors have no control over the administration of the case nor over the timing of when any disputes will be adjudicated by the Court. It would be unjust to allow a debtor-plaintiff to rest on its assurance that the interest ticker is running on its claim while the interest has stopped on the debts it owes. Equity and fairness dictate a contrary result.

■ 9. The Court finds that Falco should be allowed a setoff of the amounts due from Charter as of June 1984. According to the evidence, Charter's debt to Falco would then be reduced by $437,770.70, leaving Falco with an unsecured claim for $307,211.98.

■ 10. As to the post-petition transactions, the Court finds Charter is entitled to recover from Falco $59,000 principal

---

5. Under Texas law, prejudgment interest continues to accrue on liquidated amounts from the time the debt becomes due and payable until paid. *Palmer v. Radio Corp. of America*, 453 F.2d 1133, 1140 (5th Cir.1971). To determine the maximum legal rate of interest under Texas law, one must consult the interest rate index published by the Texas Consumer Credit Commission pursuant to § 5069–1.04 of the Texas Revised Civil Statutes Annotated (Vernon Pamp.

Supp.1971 to 1985). *See, Morgan v. Amarillo National Bank*, 699 S.W.2d 930, 934 (Tex.App. 7 Dist.1985). The Index of Maximum Interest Rates introduced at trial, indicates that the maximum legal interest rate under Texas law fluctuated between 18.0% and 21.5% between May 21, 1984 and the present. For convenience sake, Charter has calculated its claim for interest using the 18% figure.

plus $40,565.40 interest. Falco is not entitled to offset this amount against the Charter debt because pre-petition debts may not be setoff against post-petition obligations. *See e.g. In re Rinehart,* 76 B.R. at 750. Although Falco has argued that it too is entitled to post-petition damages, the record is devoid of any evidence in support of such claims.

The Court will enter a separate order in accordance with these findings.

## FINAL JUDGMENT FOR PLAINTIFF AND ORDER ALLOWING DEFENDANT'S CLAIM NO. 2116

Upon Findings of Fact and Conclusions of Law separately entered, it is ORDERED as follows:

1. As to the adversary proceeding, final judgment is entered in favor of plaintiff, Charter Crude Oil Company, and against defendant, Enron Oil Trading and Transportation Company, f/k/a P & O Falco, Inc., in the amount of $59,000.00, together with accrued interest in the amount of $40,565.40, for a total of $99,565.40, for which sum let execution issue.

2. Claim No. 2116 filed by the defendant-claimant on November 5, 1986, as amended December 23, 1987, is allowed in the amount of $307,211.98.