In re SERVICE DECORATING
COMPANY, Debtor.

SERVICE DECORATING COMPANY,
Appellant/Cross–Appellee,

v.

TRAVELERS INSURANCE COMPANY,
Appellee/Cross–Appellant.

No. 89 C 5367.

United States District Court,
N.D. Illinois, E.D.

Sept. 21, 1989.

Mitchell E. Jones, Vedder, Price, Kaufman & Kammholz, Chicago, Ill., for appellant/cross-appellee.

Robert J. Trizna, Trizna & Lepri, Chicago, Ill., for appellee/cross-appellant.

## MEMORANDUM OPINION AND ORDER

PLUNKETT, District Judge.

This is an appeal from a bankruptcy court order of December 15, 1988, on a motion for summary judgment. The relevant facts are as follows.[1] Service Deco-

---

1. Unfortunately, our understanding of the facts is based solely upon the bankruptcy court's opinions and the parties' briefs because appellant has failed to designate as part of the record

rating Company ("Service Decorating"), the Debtor, filed a petition in bankruptcy on May 20, 1986. The Travelers Insurance Company ("Travelers") filed an unsecured claim for prepetition premiums due from the Debtor on a November 1985–November 1986 insurance policy. The claim covered the period November 1985 to May 20, 1986, the date of the bankruptcy petition. Travelers filed no other claims. However, it issued two more insurance policies to the Debtor, covering November 1986–November 1987 and November 1987–November 1988. December 15, 1988 Order at 2.

The Debtor paid an estimated premium for each of the policies at the start of the policy period. The actual premium was based upon the number of employees covered during the period and was only calculated by Travelers after the policy expired, when it conducted an audit to determine whether an additional premium above the estimated premium was owed to Travelers or whether a return premium was owed to the Debtor. Travelers' Brief on Appeal at 2. With respect to the 1985–1986 policy, Travelers filed a proof of unsecured claim for $34,726.48 in premiums due for the prepetition portion of the additional premiums earned. December 15, 1988 Order at 2. Travelers claims the total additional premium owed on its 1985–1986 policy was $136,897.00. Travelers' Brief on Appeal at 2. No proof of claim was ever filed for the additional $102,170.52 Travelers claims to have been owed on the prepetition contract based upon its postpetition, preconfirmation performance. December 15, 1988 Order at 4.

A second policy was issued for November 1986 through November 1987. This policy was canceled in August 1987 by Travelers because the Debtor did not pay the estimated premium. *See* Travelers' Brief on Appeal at 3. Travelers then conducted an audit on December 8, 1987, and found that $61,797.00 in additional premium was owed to it. Travelers' Brief on Appeal at 3; Service Decorating's Appellate Brief at 6.

Meanwhile, the bankruptcy court by order on February 13, 1987, set the bar date for proofs of claims at May 15, 1987. The court entered an order confirming the Debtor's plan of reorganization on May 14, 1987. Travelers did not object and filed no additional proofs of claim. December 15, 1988 Order at 2.

Travelers issued to the Debtor a third insurance policy for November 1987–November 1988 in November 1987. Service Decorating's Appellate Brief at 7. The Debtor canceled this policy in April 1988, resulting in a return premium owed to the Debtor of $22,534.00. *See* December 15, 1988 Order at 2; March 15, 1989 Order at 1–2; May 3, 1989 Order at 2 (after some confusion, parties agreed that Debtor, rather than Travelers, had canceled the policy).

The Debtor sought the return of the $22,534, which Travelers had credited against the postpetition premiums still owed. The Debtor filed a complaint seeking a declaratory judgment that Travelers was barred from offsetting the $22,534, an amount owed to the Debtor postconfirmation, against postpetition, preconfirmation debts owed by the Debtor to Travelers. Travelers argued that because the amounts owed to Travelers on the 1986–1987 policy could not be ascertained until Travelers had conducted its audit subsequent to the cancellation of the policy, and because the policy was not canceled until after the bar date and confirmation, the entire $61,797 was a postconfirmation debt and could be offset. December 15, 1988 Order at 3. Neither party appears to have anywhere indicated what portion of the $61,797 additional premium on the 1986–1987 policy is attributable to performance during the preconfirmation period and what portion is attributable to performance during the postconfirmation period of May 14, 1987, to August 1987. The bankruptcy court held that the amounts owed to Travelers were all preconfirmation debts: that is, that Travelers' claims to these sums arose prior

the exhibits to the original summary judgment briefs before the bankruptcy court. Therefore, we are forced to rely largely on the representa-

tions of the parties concerning the relevant facts, particularly the dates of events and amounts of money involved.

to the date of confirmation and were discharged by the bankruptcy court's order of confirmation of the Debtor's plan of reorganization, pursuant to 11 U.S.C. § 1141(a). The court also noted that if the debts were in fact postconfirmation debts, then they were not subject to the bankruptcy court's supervision. December 15, 1988 Order at 4. However, the bankruptcy court held that it would permit Travelers to offset the $22,534 owed to the Debtor against the Debtor's discharged obligations on the postpetition claims of Travelers because "for Debtor to ask the court to extract this cash from a company which carried, and now must swallow, substantial unpaid obligations of this Debtor during its bankruptcy strikes the court as grossly unfair and unequitable." December 15, 1988 Order at 5.

### Analysis

We have jurisdiction to hear this appeal from a final judgment of the bankruptcy court, pursuant to 28 U.S.C. § 158(a). We first consider briefly the bankruptcy court's jurisdiction over this adversary proceeding, then proceed to a determination of the merits.

1. Jurisdiction.

Plaintiff, Service Decorating, filed a complaint for an adversary proceeding seeking the $22,534 owed to it based upon cancellation of an insurance policy entered into postconfirmation. Plaintiff stated in its complaint that the defendant, Travelers, had refused to refund the sum because Travelers had offset it against sums owed on insurance policies which had been contracted for during the pendency of the bankruptcy.

■ We must first determine whether the bankruptcy court had jurisdiction over this postconfirmation controversy. "[T]he predicate of bankruptcy jurisdiction is the possession of property [and] once the bankrupt estate is settled and transfer of the bankrupt's property is executed, 'the jurisdiction of the bankruptcy court over the property is generally said to terminate and does not follow it.' " *In re Samoset As-*

*soc.,* 654 F.2d 247, 253 (1st Cir.1981), quoting 4B *Collier on Bankruptcy,* ¶ 70.94[18], at 1198 (14th ed.1978). However, whether a post-transfer dispute is collateral to or intricately bound up with the bankruptcy administration is a fact-specific inquiry. *Id.* Even after the order of confirmation has been entered, the bankruptcy court has subject matter jurisdiction to enter orders implementing the plan of reorganization and to administer the estate. *In re Tennessee Wheel & Rubber Co.,* 64 B.R. 721, 727 (Bankr.M.D.Tenn.1986); *affirmed,* 75 B.R. 1 (M.D.Tenn.1987). Confirmation does not by itself close the case or otherwise divest the court of jurisdiction. The court retains jurisdiction to hear causes of action created by Title 11. *In re Chernicky Coal Co.,* 67 B.R. 828, 831 (Bankr.W. D.Pa.1986).

■ In this case, the bankruptcy court held that because Travelers was asserting a setoff against preconfirmation claims, some of which might have been administrative priority expenses, it retained jurisdiction to settle the dispute. The court further noted that if Travelers' argument that these expenses arose postconfirmation was correct, the court would not have jurisdiction. *See* December 5, 1988 Order at 4. We believe the bankruptcy court was correct. The bankruptcy court became intimately familiar, during the course of the bankruptcy, with Travelers' insurance policies and its relation to the Debtor. We believe it was in the best position to construe these policies and to understand the nature and timing of the claims and the amounts Travelers sought to offset. We also agree that if the claims sought to be offset all arose postconfirmation, the bankruptcy court could not have jurisdiction because the Debtor's claim for a refund clearly arose postconfirmation (the insurance contract upon which it was based was not entered until November 1987, after confirmation) and hence the dispute neither affected property of the estate nor implicated provisions of the plan of reorganization. *See In re Barker Medical Co.,* 55 B.R. 435, 436 (Bankr.M.D.Ala.1985).

In sum, we find that if the bankruptcy court was correct in ruling that Travelers' claims based on the 1985–1986 and 1986–1987 policies arose preconfirmation, then the court was correct in determining that it had subject matter jurisdiction. We further agree that if these claims arose postconfirmation, the bankruptcy court did not have jurisdiction over the dispute.

2. Substantive Issues.

█ We turn now to the issues of whether Travelers' claims arose postconfirmation and of the significance of this determination.

a. *Effects of Confirmation Under 11 U.S.C. § 1141.*

Title 11 U.S.C. § 1141 provides:

(a) ... the provisions of a confirmed plan bind the debtor ... and any creditor ... whether or not the claim or interest of such creditor ... is impaired under the plan and whether or not such creditor ... has accepted the plan.

(b) Except as otherwise provided in the plan or order confirming the plan, the confirmation of a plan vests all of the property of the estate in the debtor.

(c) ... except as otherwise provided ... after confirmation of a plan, the property dealt with by the plan is free and clear of all claims and interests of creditors....

(d)(1) Except as otherwise provided ... *the confirmation of a plan—*

(A) *discharges the debtor from any debt that arose before the date of such confirmation ....*

(Emphasis added). Hence, under the Bankruptcy Code, all claims of creditors which arose prior to confirmation are discharged and the debtor need not pay them, except as provided by the plan.

Under the Bankruptcy Act, a discharge was neither payment nor an extinguishment of the debt. However, when properly plead, it served as a bar to enforcement of an existing debt by legal proceedings. *In re Innis,* 140 F.2d 479, 481 (7th Cir.), *cert. denied,* 322 U.S. 736, 64 S.Ct. 1048, 88 L.Ed. 1569 (1944). The obligation still existed but the discharge disabled the credi-

tor from enforcing the claim. *Wagner v. United States,* 573 F.2d 447 (7th Cir.1978). The Bankruptcy Code does not appear to have altered these propositions. However, under the Bankruptcy Code, legal obligations may be discharged even where the creditor's claim has not been reduced to judgment. *Continental Assur. Co. v. American Bankshares Corp.,* 46 B.R. 206, 209 (E.D.Wis.1985). Thus, the law is clear that Travelers may not bring any legal proceeding against Service Decorating to recover amounts it is owed on the preconfirmation insurance policies if Travelers' claims based upon those policies arose prior to confirmation.

It might be argued, however, that even if Travelers' claims arose prior to confirmation, Travelers could defensively assert those claims in order to set them off against Service Decorating's claim. Title 11 U.S.C. § 553 provides:

Setoff.

(a) Except as otherwise provided ... this title does not affect any right of a creditor to offset a mutual debt owing by such creditor to the debtor that arose *before the commencement of the case* under this title against a claim of such creditor against the debtor *that arose before the commencement of the case....*

(Emphasis added). Thus, even after confirmation, Travelers could assert as a setoff to a prepetition liability owed to the Debtor a claim that arose prepetition. *See, e.g., In re Morgan,* 77 B.R. 81 (Bankr.S.D.Miss. 1987) (refund determined to be owing to debtor postpetition but which was based on prepetition transfer arose prepetition and creditor could offset it against prepetition discharged debt owed to creditor by debtor); *In re Ford,* 35 B.R. 277 (Bankr. N.D. Ga.1983) (can offset mutual debts which arose prepetition despite discharge); *In re Slaw Constr. Corp.,* 17 B.R. 744, 747 (Bankr.E.D.Pa.1982) (Bankruptcy Code allows setoff of mutual debts *both* of which arose prepetition, and creditor may raise discharged debts as an offset regardless of when debtor institutes the action, if the action is based on a claim which arose

prepetition). At least one court has further limited setoffs by holding that a creditor may not offset a discharged debt against any postpetition judgment, even if the postpetition judgment was based upon a cause of action which arose prepetition. *In re Johnson,* 13 B.R. 185, 188–89 (Bankr. M.D.Tenn.1981) ("Section 524(a)(2) thus clearly enjoins not only an affirmative recovery of a debt discharged in bankruptcy, but also a setoff of a discharged debt against a postpetition judgment.")

■ Regardless, it is clear that § 553 does not apply to Travelers since neither Travelers' claim nor the refund it owes to the Debtor arose before commencement of the case. Thus, Travelers may not rely on § 553 of the Bankruptcy Code to set off the postpetition discharged debts against Service Decorating's postpetition, postconfirmation refund. The Bankruptcy Code provides an exception to the discharge of § 1141 only for offsets of mutual *prepetition* debts. No other provision provides an exception to the discharge. The Code does not permit Travelers to avoid the effects of confirmation upon any preconfirmation claims it may have against the Debtor by offsetting them against postconfirmation debts owed to the Debtor. *See e.g., In re Johnson,* 13 B.R. at 189 (prepetition creditor may not offset a claim against the debtor that has been discharged against a postpetition liability to the debtor); *In re Reynolds,* 31 B.R. 296, 298–99 (Bankr.E.D. N.C.1983) (creditor could not apply post-discharge deposit to satisfy the discharged debt). Therefore, Travelers may only set off the debts owed to it by Service Decorating if those debts arose postconfirmation and were not discharged.

b. *When the Debts Arose.*

■ Our ruling turns upon whether the debts owed to Travelers arose prior to confirmation, in which case they were discharged under § 1141 and may not be used as setoffs under § 553, or postconfirmation, in which case the bankruptcy court, as discussed above, did not have jurisdiction over this adversary proceeding since it involved no property of or claims against the estate and no contracts entered into during the pendency of the bankruptcy proceeding and subject to the bankruptcy court's supervision. As noted above, § 1141 provides that confirmation of a plan discharges the debtor "from any debt that arose before the date of such confirmation." Title 11 U.S.C. § 101(11) provides that "debt" means "liability on a claim," and § 101(4)(A) provides that "claim" means "right to payment, whether or not such right is reduced to judgment, liquidated, unliquidated, fixed, contingent, matured, unmatured, disputed, undisputed, legal, equitable, secured or unsecured...." We understand "debt" to mean the liability of the debtor corresponding to the "claim" held by the creditor as an asset. Hence, a "debt" on the part of the debtor should arise simultaneously with when the creditor obtains a "claim." The question here is whether the debts owed to Travelers by the Debtor arose prior to confirmation, and this question is identical to the issue of whether Travelers' claim against the Debtor arose prior to confirmation.

The contracts on which the debts arose were entered into prior to confirmation. Travelers had fully performed the 1985–1986 contract prior to confirmation and had partially performed the 1986–1987 contract prior to confirmation by insuring the Debtor during those time periods. With respect to the 1985–1986 contract, it is clear that any debt from the Debtor to Travelers arose prior to confirmation on May 10, 1987. All performance ended in November 1986 and Travelers was able to conduct an audit in time to file an unsecured claim for the prepetition portion of the additional premiums earned. Hence, even viewing the claim as not arising until the time of the audit, Travelers' claim and the Debtor's debt for $102,170.52 in additional premiums earned between May 20, 1986, and November 1986 on the 1985–1986 policy arose prior to confirmation and was discharged.

The 1986–1987 policy provides a far more difficult problem. This policy was entered into in November 1986, prior to confirmation. Confirmation occurred in May, and in August Travelers canceled the policy, apparently because the Debtor had not paid

the estimated premium. Travelers' Brief on Appeal at 3. Travelers audited the policy and claims that $61,797 are owed as an additional premium. The contract was entered prior to confirmation, performance occurred both prior to and postconfirmation, cancellation occurred postconfirmation, and the audit was conducted postconfirmation.

We have reviewed the case law to determine whether the Debtor's liability on this claim arose prior to or after confirmation. The briefs of the parties have not been particularly helpful with respect to providing relevant precedents. They cite only tort cases concerning when a claim arose. These cases commence with *In re Frenville Co.*, 744 F.2d 332 (3d Cir.1984), *cert. denied*, 469 U.S. 1160, 105 S.Ct. 911, 83 L.Ed.2d 925 (1985), in which the Third Circuit held that a claim for indemnity not based upon a contract arose at the time that, under the relevant state law, a third-party complaint for indemnity could be brought.[2] The court distinguished its ruling from the situation where an actual contract existed between the parties. "When the parties agree in advance that one party will indemnify the other party in the event of a certain occurrence, there exists a right to payment, albeit contingent, upon the signing of the agreement." *In re Frenville Co.*, 744 F.2d at 336. In such a contract, the right to payment exists as of the time of the signing of the agreement but is dependent on the occurrence of a future event. *Id.*

Applying such reasoning here appears to us to lead to the following conclusion: at the time of the signing of the contract in November 1986, the Debtor and Travelers agreed that, contingent upon Debtor's using more than the estimated premium, Debtor would pay to Travelers any amount actually used. Hence, Travelers' contingent right to payment existed upon the signing of the insurance agreement. That

the amount owed to Travelers was unliquidated, contingent and unmatured at that time does not matter, since a "claim" under § 101(4) means a right to payment whether or not it is "unliquidated ... contingent ... [or] unmatured."

The bankruptcy court reached the same conclusion, holding that the claims arose preconfirmation. This holding is consistent with Congressional intent:

> consistent with the congressional intent evinced by the legislative history, courts construing § 101(4) ... have acknowledged the breadth of the definition of claim, characterizing it as, *inter alia*, 'broad,' *Ohio v. Kovacs*, 469 U.S. 274 [282–83], 105 S.Ct. 705, 709, 83 L.Ed.2d 649 (1985); ... 'could not be broader,' *In re Thomas*, 12 B.R. 432, 433 (Bankr.S.D. Iowa 1981); 'broadest possible,' *Kallen v. Litas*, 47 B.R. 977, 982 (N.D.Ill.1985) ... 'all-encompassing,' *In re Baldwin–United Corp.*, 48 B.R. 901, 903 (Bankr.S. D.Ohio 1985) ... and 'sufficiently broad to cover any possible obligation,' *In re Smith Jones, Inc.*, 26 B.R. 289, 293 (Bankr.D.Minn.1982).

*In re Edge,* 60 B.R. at 693–94, citing *Robinson v. McGuigan*, 776 F.2d 30, 34–35 (2d Cir.1985), *reversed on other grounds*, 479 U.S. 36, 107 S.Ct. 353, 93 L.Ed.2d 216 (1986).

The few cases we have found involving the issue of when claims for payment based on contracts arose also support this holding. In *In re Peltz*, 55 B.R. 336 (Bankr.M.D.Fla.1985), the court held that the creditor-employer's claim for payment based upon the debtor-employee's postpetition breach of a covenant not to compete which had been entered into four years prior to the debtor-employee's filing of his petition in bankruptcy arose prepetition. The debtor-employee terminated has employment eight days after filing his petition in bankruptcy. The court stated:

> *Van Dorn Plastic Machinery Co.*, 68 B.R. 495, 497–98 (Bankr.E.D.N.Y.1986); *In re A.H. Robins Co.*, 63 B.R. 986, 990–93 (Bankr.E.D.Va.1986); *In re Edge*, 60 B.R. 690 (Bankr.M.D.Tenn.1986). The controversy over *Frenville*, however, is not pertinent to the parts of the *Frenville* holding cited in support of our decision.

---

**2.** *Frenville* has been much criticized because it relied upon state law to determine when a claim under the Bankruptcy Code arose. Decisions criticizing *Frenville* generally would find that the claim arose *earlier* than in *Frenville*, at the time of the allegedly negligent acts or at the earliest point in the relationship between the victim and the wrongdoer. *See, e.g., Acevedo v.*

There is no dispute that on the day relief was entered in this bankruptcy proceeding that [the employer-creditor's] claim could be characterized as unliquidated, contingent, unmatured and disputed.... As a general rule when parties agree in advance that one party will pay the other party liquidated damages upon the occurrence of some certain event, '... there exists a right to payment, albeit contingent, upon the signing of the agreement.' [*Matter of M. Frenville Co.*, 744 F.2d 332, 336 (3d Cir.1984)].

*Id.* at 338. *Peltz* is clearly quite similar to this case. In *Peltz*, the creditor could not have calculated what his damages would be, nor was he aware he had any damages prior to the date of the petition. Nevertheless, his claim, for bankruptcy purposes, arose prior to the date of the petition at the time of contracting. Travelers' claim, therefore, also arose at the time of the contract, despite Travelers' inability at that time to calculate the amount owed to it or to ascertain whether any amount would ever be owed to it.

We have found no other cases with facts as close to this case as *Peltz*. However, we note that in *In re Morgan*, 77 B.R. 81 (Bankr.S.D.Miss.1987), a Chapter 7 case, the court rejected Travelers' argument that merely because Travelers did not know whether the Debtor would owe it additional funds until after the audit had been conducted the claim for those funds could not arise until the time of the audit. In *Morgan*, the creditor, an electric company, raised its rates in 1980. The rate increases were subject to a refund if the regulatory agency did not approve them. By March 1983, the debtor owed the electric company over $6,000. In August of that year, the debtor filed a petition in bankruptcy and in February 1984, it received a discharge. In April 1984, the regulatory agency ordered the electric company to make a refund. The court held that since the refund was for services provided prior to the petition, any right to a refund that was generated by those services, regardless of when it was determined that a refund was due, was a right which arose prepetition. *Id.* at 83–84. *Morgan* supports the holding that Travelers' claim for the portion of the $61,-797 Travelers is owed which results from Travelers' insuring of the debtor from November 1986 until May 1987 arose prior to confirmation and hence was discharged. However, neither party has allocated the $61,797 amount into portions owed based upon preconfirmation and postconfirmation insurance services by Travelers.

We are inclined to treat the entire $61,-797 as arising post-confirmation, as the bankruptcy court did. As we noted above, both *Frenville* and *Peltz* support this decision, as does the definition of a "claim" in § 101(4) and the accompanying legislative history. Further, we could treat the entire $61,797 as arising from services prior to May 15, 1987, since Travelers has asserted the setoff and it is Travelers' burden to prove that these debts arose postconfirmation. Since Travelers has presented no proof as to what portion of this debt is based upon services it rendered after May 15, 1987, it has failed to satisfy its burden. The debt it seeks to set off against the Debtor's claim for a refund arose prior to confirmation and has been discharged.

We further note that the policy of treating claims as arising at the time of the contract, despite the fact that this may pose problematic for creditors at times, serves the equitable purpose of providing a remedy for all creditors in the course of the bankruptcy proceeding, no matter how attenuated their claim. In many cases, this policy will benefit a creditor such as Travelers rather than injure it. If, for example, Service Decorating's bankruptcy had resulted in liquidation, Travelers would never have been able to collect any premiums owed in excess of the estimated premiums unless Travelers' claims for those excess premiums were treated as arising prior to confirmation, regardless of the fact that Travelers would not be able to audit them until after the last day the Debtor operated. If the Debtor operated until the final day of the bankruptcy proceeding, Travelers could not audit the policy until after the bankruptcy was over, at which time the Debtor would have ceased to exist. Hence, if Travelers' claim only arose on the audit date, Travelers could never collect the unpaid premiums. However, if Travelers' claim is treated as arising prior to confir-

**866**

mation, its claim could be estimated under 11 U.S.C. § 502(c) and it could share in the estate like any other unsecured creditor. We believe this result is more equitable and is consistent with the Bankruptcy Code's purpose of providing a fair distribution of the assets of the estate among all of the debtor's creditors.

Thus, we affirm the bankruptcy court's holdings that it had jurisdiction and that the claims Travelers sought to set off against the postconfirmation refund owed by it to the Debtor arose prior to confirmation, were discharged, and could not be used as a setoff.

3. *Equity.*

■ Despite these holdings, we find ourselves unable to affirm the holding of the bankruptcy court. Having reached the conclusion above that under the Bankruptcy Code these liabilities of the Debtor were discharged, we do not believe that the bankruptcy court had the power, despite the equities of the situation, to permit Travelers to set off these liabilities against the refund it owed to the Debtor. The bankruptcy court was understandably concerned that the Debtor was unfairly attempting to extract cash from a creditor that had helped carry it through its bankruptcy. We find that however unfair this may seem, the Bankruptcy Code provides the Debtor with just such an advantage against its creditors as part of its fresh start. As discussed above, we do not believe that the Code permits a creditor to offset a postconfirmation liability to the debtor against a preconfirmation debt of the debtor despite the equities of the situation. Therefore, having agreed in full with the bankruptcy court's analysis of the relevant law, we nevertheless must reverse its ruling.

### Conclusion

The order of the bankruptcy court is reversed. Travelers is ordered to pay Service Decorating $22,534.