**In re DOUG SMITH, INC.,
Debtor in Possession.**

**DOUG SMITH, INC., Plaintiff,**

v.

**FREEDOM ELECTRICAL
CONTRACTORS, INC.,
et al., Defendants.**

**Bankruptcy No. 90–04677.
Adv. No. 3–91–0105.**

United States Bankruptcy Court,
S.D. Ohio, W.D.

Oct. 29, 1991.

Scot A. Stone, Stone & Stone, Dayton, Ohio, for plaintiff-debtor.

John T. Ducker, Talbot & Ducker, Dayton, Ohio, for defendants.

U.S. Trustee, Columbus, Ohio.

## DECISION ON ORDER PARTIALLY GRANTING PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT AND DENYING DEFENDANTS' MOTION FOR SUMMARY JUDGMENT

WILLIAM A. CLARK, Bankruptcy Judge.

Before the court are motions for summary judgment filed by the plaintiff and the defendants. The court has jurisdiction pursuant to 28 U.S.C. § 1334 and the standing order of reference entered in this district. This court may determine this adversary proceeding and enter appropriate orders and judgments pursuant to 28 U.S.C. § 157(c)(2).[1]

### UNDISPUTED FACTS

On October 22, 1990, Doug Smith, Inc. (Plaintiff/Debtor) filed a petition in bankruptcy pursuant to chapter 11 of the Bankruptcy Code. Subsequently, the plaintiff filed this adversary proceeding against defendants Freedom Electrical Contractors, Inc. ("Freedom"), and Tom Ratliff, alleging a breach of contract by Freedom and fraud by Tom Ratliff. The following allegations of the plaintiff's complaint have been admitted to by the defendants in their answer as well as in the "Pretrial Order":

1. On or about July 18, 1990 at Plaintiff's place of business in Springboro,

---

1. All parties have signed a "Pretrial Order" (Doc. # 10) which states that "[t]he jurisdiction of the court is not disputed." Although this proceeding appears to be a non-core proceeding, it is clearly "related" to the debtor's bankruptcy case. In this circuit, the rule is that absence of a timely objection to the bankruptcy court's juris-diction constitutes implied consent to resolution of the controversy. Where no party, as here, timely objects, the bankruptcy court may entertain jurisdiction over the matter and enter a final judgment, order, or decree. *DuVoisin v. Foster (In re Southern Industrial Banking Corp.)*, 809 F.2d 329 (6th Cir.1987).

Ohio, an auction was conducted by Plaintiff's agent, Karl Wise and Associates Auctioneers, in order to liquidate Plaintiff's business assets including, but not limited to restaurant equipment and supplies.

2. At said time and date, Tom Ratliff, president of Freedom Electrical Contractors, Inc. placed a bid with Karl Wise and Associates Auctioneers in order to purchase certain office equipment and restaurant equipment. A true and accurate copy of the invoice listing the items bid upon and purchased by Defendant, Freedom Electrical Contractors, Inc. is attached hereto and marked Exhibit "1".

3. Defendants' offer to purchase the equipment listed in Exhibit "1" for the total price of $2,773.50, was the highest and best bid for said merchandise and was accepted by Plaintiff's agent, Karl Wise and Associates Auctioneers.

4. Thereafter, Defendant's agent, Tom Ratliff, did execute and deliver to Plaintiff's agent, Karl Wise and Associates Auctioneers, a check written on the Freedom Electrical Contractors, Inc. account with the Huntington National Bank made payable to Karl Wise Trust in the total amount of $2,773.50. A true and accurate copy of said check is attached hereto and marked as Exhibit "2".

5. Defendant did remove the merchandise listed in Exhibit "1" and has continued to retain possession and control of said merchandise.

6. Defendant then intentionally and deliberately stopped payment on the check previously issued to Karl Wise and Associates Auctioneers and attached hereto as Exhibit "2".

In addition to denying the remaining allegations of the plaintiff's complaint, the defendants set forth the affirmative defenses of setoff and payment:

3. Defendants affirmatively state that Freedom Electrical Contractors, Inc., is entitled to a set-off in the amount of $3,000.00 plus interest from December 12, 1989 for money owed it from plaintiff....

4. Defendants assert the affirmative defense of payment.

Defendants have filed a motion for summary judgment accompanied by the following affidavit of Thomas Ratliff, President of Freedom Electrical Contractors, Inc.:

Thomas Ratliff, President of Freedom Electrical Contractors, Inc., being first duly cautioned and sworn, deposes and says that on September 12, 1989, on behalf of Freedom Electrical Contractors, Inc., he did invoice Doug Smith, Inc. for the sum of $3,000.00 for electrical work performed at Sinclair College on a dishwasher. This work was performed pursuant to a verbal order from Doug Smith, Inc. with the terms of the electrical work being payment in full within 30 days, with a 2% service charge on accounts not paid within 30 days. A copy of the invoice sent to Doug Smith, Inc. on September 12, 1989 is attached hereto.

Affiant further states that the sum of $2,773.50 was credited to that invoice on or about July 18, 1990.

Doc. # 11.

Plaintiff has also filed a motion for summary judgment, accompanied by a copy of a bank notice, dated July 24, 1990, to Karl Wise that payment was stopped on the check issued by Freedom.

### CONCLUSIONS OF LAW

Although § 553 of the Bankruptcy Code generally preserves a creditor's right of setoff, it also imposes limitations upon the exercise of that right:

(a) Except as otherwise provided in this section and in sections 362 and 363 of this title, this title does not affect any right of a creditor to offset a mutual debt owing by such creditor to the debtor that arose before the commencement of the case under this title against a claim of such creditor against the debtor that arose before the commencement of the case, except to the extent that—

....

(b)(1) Except with respect to a setoff of a kind described in sections 362(b)(6), 362(b)(7), 362(b)(14), 365(h)(2) or 365(i)(2), of this title, if a creditor offsets a mutual

debt owing to the debtor against a claim against the debtor on or within 90 days before the date of the filing of the petition, then the trustee may recover from such creditor the amount so offset to the extent that any insufficiency on the date of such setoff is less than the insufficiency on the later of—

(A) 90 days before the date of the filing of the petition; and

(B) the first date during the 90 days immediately preceding the date of the filing of the petition on which there is an insufficiency.

(2) In this subsection, "insufficiency" means amount, if any, by which a claim against the debtor exceeds a mutual debt owing to the debtor by the holder of such claim.

■■■ The effect of § 553(b)(1) "is to allow the trustee to recover setoffs which advance the position of one creditor at the expense of all other creditors during the 90 day period before bankruptcy." *Pfau v. First National Bank (In re Schmidt)*, 26 B.R. 89, 92 (Bankr.Minn.1982). In essence, § 553(b) is a miniature preference provision. *Eckles v. Petco, Inc. (In re Balducci Oil Co., Inc.)*, 33 B.R. 847, 852 (Bankr.Colo. 1983). The critical inquiry, here, is whether the "alleged" setoff[2] by Freedom took place within the 90–day period prior to the filing of the plaintiff's petition in bankruptcy or outside of that period. Under Ohio law,

[s]etoff, both at law and in equity, is that right which exists between two parties, each of whom under an independent contract *owes a definite amount* to the other, to set off their respective debts by way of mutual deduction. *Walter v. National City Bank of Cleveland*, 42 Ohio

St.2d 524, 525, 330 N.E.2d 425, 427 (Ohio 1975) (Emphasis Supplied).

The question, therefore, is when is the first date that Freedom could have legally performed a setoff, i.e., when did Freedom owe a definite amount to the plaintiff?

On July 18, 1990, as a result of bidding at an auction, Freedom became obligated to pay the sum of $2,773.50 to the plaintiff for the items sold. The effect upon this obligation by the issuance of Freedom's check to pay for the goods is governed by Ohio Rev.Code § 1303.75 [U.C.C. § 3–802]:

Effect of instrument on obligation for which it is given.

(A) Unless otherwise agreed where an instrument is taken for an underlying obligation:

(1) the obligation is pro tanto discharged if a bank is drawer, maker, or acceptor of the instrument and there is no recourse on the instrument against the underlying obligor; and

(2) in any other case the obligation is suspended pro tanto until the instrument is due or if it is payable on demand until its presentment. If the instrument is dishonored action may be maintained on either the instrument or the obligation; ....

The Official Comment to the U.C.C. explains this section as follows:

3. It is commonly said that a check or other negotiable instrument is "conditional payment." By this it is normally meant that taking the instrument is a surrender of the right to sue on the obligation until the instrument is due, but if the instrument is not paid on due presentment the right to sue on the obligation is "revived." Division (A)(2) states the result in terms of suspension

---

2. Setoff is an affirmative defense which must be proven by the party asserting it. *First National Bank of Louisville v. Hurricane Elkhorn Coal Corp. II*, 763 F.2d 188, 190 (6th Cir.1985). In his affidavit, Mr. Ratliff merely states that "the sum of $2,773.50 was credited to [an] invoice on or about July 18, 1990." Typically, a setoff occurs when a creditor:

i) decides to exercise the right to setoff;

ii) takes some action to accomplish the setoff, and

iii) prepares some record, usually in the creditor's financial books, which evidences the setoff.

*Charter Crude Oil Co. v. Enron Oil Trading & Transportation Co.*, 86 B.R. 280, 281 n. 2 (Bankr. M.D.Fla.1988). Here, there is merely the conclusory statement that Freedom performed a setoff, but there is no written evidence that the setoff was in fact performed. "A mere declaration of an intent to setoff retrospectively does not establish a setoff." *Belfance v. BancOhio/National Bank (In re McCormick)*, 5 B.R. 726, 730 (Bankr.N.D.Ohio 1980).

of the obligation, which is intended to include suspension of the running of the statute of limitations. On dishonor of the instrument the holder is given his option to sue either on the instrument or on the underlying obligation.

Therefore, until the check was dishonored by Freedom's bank, the plaintiff could not sue on Freedom's obligation to purchase the goods, nor could it bring an action upon the check itself. Although Freedom had not yet "paid" the underlying obligation, nothing was "due" from Freedom to the plaintiff until the check was dishonored. *Canal–Randolph Anaheim, Inc. v. Moore,* 78 Cal.App.3d 477, 143 Cal. Rptr. 789, 23 U.C.C.Rep.Serv. 685, 690 (1978).[3]

On July 24, 1990, Freedom's bank sent a notice of dishonor to the plaintiff's agent, at which time Freedom's underlying obligation was revived pursuant to Ohio Rev.Code § 1303.75(A)(2), and the plaintiff had the option of suing on either the underlying obligation or the check. Not until July 24, 1990, did Freedom have a fixed, noncontingent liability to the plaintiff, and therefore Freedom could not effect a setoff against the plaintiff until this date. Because this date falls on the 90th day prior to the filing of the plaintiff's bankruptcy petition, and Freedom could not, as a matter of law, have performed a valid setoff prior to this date, the court finds that any attempted setoff by Freedom fell within the 90–day period of § 553(b)(1) of the Bankruptcy Code, entitling the plaintiff to recovery in this proceeding.[4]

Because of the stipulation that Tom Ratliff acted as the agent of Freedom and the lack of sufficient evidence at this stage of the proceedings to support a finding of fraud on the part of Tom Ratliff, the court is only ruling on Plaintiff's first cause of action, i.e., the claim against Freedom. Neither the plaintiff nor Tom Ratliff has sufficiently pierced the pleadings in their motions for summary judgment to permit the court to resolve the matter of fraud, and Plaintiff's second cause of action will be set for trial.

For the foregoing reasons the motion of the plaintiff for summary judgment against Freedom will be granted, and the motion against Tom Ratliff will be denied. The motion of the defendants for summary judgment will also be denied.

---

**3.** In addition, it seems to this court that the logical and equitable corollary to suspension of the plaintiff's right to sue on the underlying obligation until the check was dishonored is a contemporaneous suspension of the right of Freedom to exercise a setoff against the underlying obligation.

**4.** Because of the date that Freedom became eligible to perform a setoff, the court does not reach the issue of the appropriateness of otherwise recognizing a setoff under the facts of this case. Setoff lies within the equitable discretion of a court, *In re Southern Industrial Banking Corp., supra,* 809 F.2d at 332, and will not be permitted when it is inequitable or contrary to public policy. *Federal Deposit Insurance Corp. v. Bank of America National Trust,* 701 F.2d 831, 836 (9th Cir.1983). Clearly, to reward wrongful conduct with a setoff would be contrary to public policy.